No. 62,897

STATE OF KANSAS, *Appellant*, v. NORMAN H. DAMM, *Appellee*.

(787 P.2d 1185)

Opinion filed March 2, 1990.

*Rebecca D. Brock*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Paul J. Morrison*, district attorney, were with her on the brief for the appellant.

*Joseph L. Dioszeghy*, of Overland Park, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, C.J.: This is an appeal by the State from an order of the trial court suppressing evidence, discharging defendant, Norman H. Damm, and dismissing the case. This is not an interlocutory appeal, K.S.A. 22-3603, but an appeal after final judgment, K.S.A. 1989 Supp. 22-3601(a) and K.S.A. 22-3602(b)(1).

The facts are undisputed. On the morning of April 8, 1988, Norman Damm was driving his car when he was stopped by Officer Lewis-Jones of the Lenexa police department. Officer Lewis-Jones stopped the car because the taillights were defective; one light was out, the other brightly lit as if a brake light was on. *There was no other reason for the stop.*

After stopping the car, Officer Lewis-Jones demanded identification from Damm, as well as from his two passengers, David Smidl and Damm's brother David. All three complied and produced their driver's licenses. They were left sitting in the Damm vehicle while Officer Lewis-Jones returned to his police car to do a "routine records check" on each of them. Again, there was no reason for the identification check on the two passengers except they were riding in a vehicle with defective taillights.

The check on passenger David Smidl disclosed that there was a municipal court warrant outstanding for his arrest for "failure to appear." Officer Lewis-Jones did not know what the municipal court charge against Smidl was; at trial, the State said the warrant was "based on perhaps a traffic violation."

Officer Lewis-Jones returned to the Damm car and arrested Smidl pursuant to the warrant. He handcuffed Smidl and placed him in the police car. The officer then returned to the car and ordered the brothers out of it. Officer Lewis-Jones then proceeded to search the entire car "incident to Smidl's arrest." There was no other reason for the search. The State concedes there was no probable cause, no consent, and no plain view justification for the search. The major reason advanced by Officer Lewis-Jones for the search was that it was "department policy."

The search turned up drug paraphernalia and a small supply of cocaine, after which Officer Lewis-Jones arrested Smidl and the Damm brothers for possession of cocaine. The officer forgot to cite Norman Damm for the defective taillights that night, but mailed a citation to him later.

Defendant filed a motion to suppress evidence. An evidentiary hearing was held before the trial court on September 6, 1988. The parties stipulated that the testimony of Officer Lewis-Jones, given at the preliminary examination, would constitute the evidence on the motion. After hearing the argument of counsel and reviewing the preliminary hearing transcript, the trial court sustained the motion to suppress, discharged the defendant, and released the surety on his bond. The State appeals.

Under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant issued upon probable cause is *"per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions."

*Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). Upon the hearing of a motion to suppress evidence, the State bears the burden of proving to the trial court the lawfulness of the search and seizure. *Mincey v. Arizona*, 437 U.S. 385, 390-91, 57 L. Ed. 2d 290, 98 S. Ct. 2408 (1978); *State v. Schur*, 217 Kan. 741, 743, 538 P.2d 689 (1975). An appellate court will uphold a trial court's suppression of evidence if that ruling is supported by substantial competent evidence. *State v. Chiles*, 226 Kan. 140, 144, 595 P.2d 1130 (1979). The trial court's decision will be upheld even if it is found that the court reached the right result for the wrong reason. *Sutter Bros. Constr. Co. v. City of Leavenworth*, 238 Kan. 85, 93, 708 P.2d 190 (1985).

The State argues the search of the Damm vehicle was lawful, relying upon *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, *reh. denied* 453 U.S. 950 (1981); *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 (1983); *State v. White*, 230 Kan. 679, 640 P.2d 1231 (1982); and *State v. Press*, 9 Kan. App. 2d 589, 685 P.2d 887, *rev. denied* 236 Kan. 877 (1984). The facts of each of these cases make them readily distinguishable from the case at hand.

*Belton* involved the stop of a speeding car. The officer asked the driver for his license and the automobile registration. He discovered that none of the occupants owned the vehicle or were related to the owner. Meanwhile, he smelled the odor of burnt marijuana and saw an envelope marked "Supergold" on the floor of the car; he associated the envelope with marijuana. He directed the four occupants to get out of the car and arrested them for possession of marijuana. He then patted them down, picked up the envelope and found marijuana inside, and proceeded to search the passenger compartment of the vehicle. He found cocaine in the pocket of a jacket which was lying on the back seat. The United States Supreme Court found the search constitutionally valid, and laid down the following "bright-line" rule: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460. The court went on to say "that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is

within reach of the arrestee, so also will containers in it be within his reach." 453 U.S. at 460.

The facts in both *Deskins* and *White* distinguish those cases from this one. In *Deskins,* the defendant was stopped at a road-block set up for the purpose of checking drivers' licenses. An officer asked for the defendant's license, examined it, and found it to be in order. He could smell a strong odor of some type of alcoholic beverage on defendant's breath and noted that his eyes were bloodshot and watery. The officer asked the defendant to step outside where sobriety tests were administered, after which the defendant was arrested and moved to a police car. Another officer moved the defendant's car out of the check lane and either he or another officer searched the passenger compartment of the vehicle and found marijuana in the glove compartment. We first determined that the roadblock was lawful and thus the initial stop or seizure was not constitutionally invalid. We then held that "the officer had sufficient reason and probable cause to place defendant under arrest when it appeared he was under the in-fluence of alcohol. The arrest of the defendant being lawful, the search of the passenger compartment of his automobile was also lawful." 234 Kan. at 543.

In *White,* a robbery occurred during the early morning hours. A description of the lone robber, the escape vehicle, and a partial license number was broadcast within minutes. While the broad-cast was being made, an officer observed a car matching the description leaving the general area of the crime. A high-speed chase ensued; the defendant was arrested after his vehicle was rammed by a police car. Following the removal of the defendant from his car, the officer reached into the vehicle and seized a jacket and cap lying on the front seat. These matched the de-scription of those worn during the robbery. Citing *Belton,* we upheld the search as being a contemporaneous incident of a lawful arrest.

*Press* involved the stop of a weaving car. The trooper observed the vehicle on a four-lane street with a center turn lane. It was weaving back and forth into the center turn lane and into the outside lane without giving turn signals. The car then stopped for a traffic light which was green for its lane of travel. The trooper stopped the car and asked the driver to perform field

sobriety tests. The driver's responses indicated he was inebriated. The trooper also smelled a mild odor of alcoholic beverage on the driver's breath. At that point, he arrested the driver for driving while under the influence of alcohol, took him into custody, handcuffed him, and placed him in the patrol car. The officer then searched the vehicle for a bottle. He found an empty wine bottle, marijuana, and drug paraphernalia. The trial court suppressed the evidence found in the search; the Court of Appeals reversed and sustained the search as valid. The Court of Appeals relied upon *Belton* and upon our opinions in *Deskins* and *White*.

*Belton* and *White* were plain view cases; contraband or clothing similar in description to that worn in a robbery were in plain view of the arresting officer. *Press* and *Deskins* were DUI cases in which an intoxicated driver was removed from a vehicle. All four cases involved lawful arrests and all four vehicle searches were reasonable.

This case is different. While Damm was properly stopped and checked for the defective taillights, it was improper to seize him for the amount of time it took to run a check on every passenger in the car with him. An individual is "seized" when an officer restrains his freedom, even if the detention is brief and falls short of arrest. The Fourth and Fourteenth Amendments prohibit unreasonable seizures as well as searches. *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975); *State v. Epperson,* 237 Kan. 707, 712, 703 P.2d 761 (1985). The scope and duration of a seizure must be strictly tied to and justified by the circumstances which rendered its initiation proper. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Otherwise, the driver of a carload of people on the way to work, the driver of a vanload of people on the way to a ball game, or the driver of an intercity bus loaded with passengers, when stopped for a defective taillight, could be detained for an inordinate amount of time while the officer runs record checks on every passenger aboard.

The officer in this case had no reasonable suspicion that there were outstanding warrants for the passengers. He had no report of the commission of a crime, saw nothing within the car which would indicate to him that the occupants had committed any offense, and had no reasonable justification for requiring identi-

fication of the passengers and running record checks on them. The seizure of the three occupants of the vehicle while "routine record checks" were made of all occupants was unreasonable. See *State v. Epperson*, 237 Kan. at 712-13.

Without the unreasonable detention, the officer had no reason to arrest Smidl or the Damms. Without the arrest, there could be no search. Without the search, there was no evidence against Damm. The detention and search being unlawful, the evidence is inadmissible as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Epperson*, 237 Kan. at 719.

Similar principles were involved in *Ybarra v. Illinois*, 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979). There, the United States Supreme Court held a search warrant issued on probable cause authorizing police officers to search a tavern and its bartender did not give them authority to seize and search the patrons of the bar. The officers had no reason to believe the patrons to be armed and dangerous, or to believe they were engaged in criminal activity. The court held each individual is "clothed with constitutional protection against an unreasonable . . . seizure," which may not be denied by the individual's "mere propinquity to others independently suspected of criminal activity." 444 U.S. at 91.

Under the facts of this case, the judgment of the district court suppressing the evidence was proper. The judgment is affirmed.