(5 P.3d 1012)

No 82,243

STATE OF KANSAS, *Appellee,* v. SHAWN MICHAEL JONES, *Appellant.*

Opinion filed May 5, 2000.

*Michael S. Holland,* of Holland and Holland, of Russell, for the appellant.

*Thomas R. Stanton,* assistant county attorney, *Julie McKenna,* county attorney, and *Carla J. Stovall,* attorney general, for the appellee.

Before ELLIOTT, P.J., LEWIS, J., and BUCHELE, S.J.

LEWIS, J.: Defendant Shawn Michael Jones was convicted, after a bench trial on stipulated facts, of possession of methamphetamine, possession of amphetamine, obstruction of legal process, possession of marijuana, and possession of drug paraphernalia. This is a direct appeal from the convictions.

The issues presented on appeal deal with whether the trial court erred in denying defendant's motion to suppress evidence.

At the time of defendant's arrest, he was a passenger in an automobile driven by Shawn Miller. The facts indicate that as Miller drove the automobile down South Santa Fe Street in Salina, he was detected to be traveling 30 miles per hour in a 20 mile-per-hour zone. Officer Patrik Wilson Goss of the Salina Police Department determined that the vehicle being driven by Miller was speeding and stopped the vehicle for a speeding violation.

The officer approached the vehicle and asked Miller for his driver's license. Miller produced his license. At the same time, the officer asked defendant for identification. Defendant replied that he had no identification but that his name was Shawn M. Jones and his date of birth was September 10, 1973. The officer then went back to his vehicle to run a check on the driver and the passenger and to write out the traffic ticket. The check on the passenger advised that an outstanding warrant existed for a Shawn M. Jones with a date of birth of September 10, 1971. The physical description on the warrant fit defendant but the birthdate did not. Officer Goss then went back to the vehicle and asked defendant for his correct date of birth, and defendant gave him the date shown on the warrant.

Officer Goss then advised defendant there was a warrant outstanding for his arrest and that he was being arrested on the basis of that warrant. He asked defendant to step out of the car. De-

fendant did so, and the officer placed him under arrest. As Officer Goss was about to handcuff defendant, defendant said, " 'I don't want to go to jail,' " and tried to run away. An altercation followed in which defendant was physically taken down by Officer Goss and held while assistance arrived. When an assisting officer arrived, defendant was searched incident to his arrest, and the search revealed the drugs and drug paraphernalia, which were the subject of the motion to suppress.

Defendant argues the evidence seized incident to his arrest should have been suppressed. He argues the police officer exceeded the reasonable scope of the detention when he requested defendant's driver's license and ran a records check on defendant. Defendant relies primarily on the Kansas Supreme Court decision of *State v. Damm*, 246 Kan. 220, 787 P.2d 1185 (1990). Defendant suggests *Damm* is directly on point.

We conclude *Damm* is not controlling and the trial court did not err in denying defendant's motion to suppress.

When the facts material to a decision of the court on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law subject to unlimited review. *State v. Rexroat*, 266 Kan. 50, 53, 966 P.2d 666 (1998).

In the instant matter, there is no question that the vehicle was stopped only for a speeding violation. The police officer had no suspicion that any other criminal activity had taken place or was involved in the stop of the vehicle. The police officer testified he routinely asks the driver and passengers of a vehicle for identification. The officer explained his conduct as follows:

"Q. Officer Goss, you stopped, was it Shawn Miller—I can't remember the name you said—for speeding?

"A. Yes.

"Q. Okay. Was there any other reason that you stopped the vehicle?

"A. No, ma'am.

"Q. Okay. And when you approached, did you advise Mr. Miller the reason for the stop?

"A. I did.

"Q. Okay. And at that time you asked him for his driver's license?

"A. I did.

"Q. And also you asked the defendant, who was a passenger, for his driver's license?

"A. I asked him if he had any identification on him.

"Q. And he told you no, he did not?

"A. That is correct.

"Q. And then you asked him for his name?

"A. That is correct.

"Q. And did he give that to you?

"A. He did.

"Q. Okay. And it was your intention when you asked for the driver's license of the driver of the vehicle to do that so you could give him a citation; is that correct?

"A. It is.

"Q. And to run his driving privileges?

"A. Correct.

"Q. And when you asked for the driver's license, Mr. Jones, your intention was to run his name also?

"A. Anytime I stop a vehicle for an infraction that I'm going to issue a citation for what I do is I get not only the driver's information, I also get the information of all the passengers, especially if it's children under aged for a citation to the parent for no safety restraint or no child in a seat belt. That way at a later time people tend to plead not guilty, people go to court, I know who I was dealing with, who I was talking to so when I testify I can give an accurate record of who was in the vehicle at that time.

"Q. Just for clarification there were no children in the vehicle at that time?

"A. No.

"Q. The only two people were Mr. Miller and the passenger, Mr. Jones?

"A. Correct.

"Q. So you ran the driver's license of Mr. Miller; is that correct?

"A. I did.

"Q. And then you also ran the passenger's driver's license?

"A. I just ran his name. That's all I had, name and date of birth that he had given me.

"Q. Okay. And that is how you turned up the warrant; is that correct?

"A. That is correct. Basically my dispatcher found it because the information he gave me was close but not exact."

The question we must determine is whether a police officer may, within the reasonable scope of a stop for a traffic violation, request identification from a passenger so that he or she may give an accurate record at the trial of who was in the vehicle at the time of the stop and so that he or she will have a record of the witnesses to the occurrence for which the vehicle was stopped. We hold that such a request is permissible and is within the scope of the stop of a vehicle for a traffic violation.

In *State v. Damm*, the defendant was the driver of a vehicle which was stopped. The vehicle was stopped because the taillights were defective; there was no other reason for the stop. The officer in that case did a "routine records check" on the defendant and his two passengers. The check revealed an outstanding warrant on one of the passengers. This passenger was arrested, and in the search incident to that arrest, cocaine was found and defendant, the driver of the vehicle, was also arrested for and convicted of possession of cocaine. The officer gave no reason for the identification check of the passengers other than it was "department policy." 246 Kan. at 221. Defendant filed a motion to suppress the evidence seized from the passenger, and this motion was granted by the trial court. On appeal, the Supreme Court affirmed the trial court and held:

"This case is different. While Damm was properly stopped and checked for the defective taillights, it was improper to seize him for the amount of time it took to run a check on every passenger in the car with him. An individual is 'seized' when an officer restrains his freedom, even if the detention is brief and falls short of arrest. The Fourth and Fourteenth Amendments prohibit unreasonable seizures as well as searches. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975); *State v. Epperson*, 237 Kan. 707, 712, 703 P.2d 761 (1985). The scope and duration of a seizure must be strictly tied to and justified by the circumstances which rendered its initiation proper. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Otherwise, the driver of a carload of people on the way to work, the driver of a vanload of people on the way to a ball game, or the driver of an intercity bus loaded with passengers, when stopped for a defective taillight, could be detained for an inordinate amount of time while the officer runs record checks on every passenger aboard.

"The officer in this case had no reasonable suspicion that there were outstanding warrants for the passengers. He had no report of the commission of a crime, saw nothing within the car which would indicate to him that the occupants had committed any offense, and had no reasonable justification for requiring identification of the passengers and running record checks on them. The seizure of the three occupants of the vehicle while 'routine record checks' were made of all occupants was unreasonable. See *State v. Epperson*, 237 Kan. at 712-13." *State v. Damm*, 246 Kan. at 224-25.

The Supreme Court in *Damm* clearly required that in order to be admissible, evidence must be obtained during the scope and duration of a seizure which is strictly tied to and justified by the

circumstances which rendered its initiation proper. We conclude that in this case the standard set forth in *Damm* was met.

The facts in this case are different from those in *Damm*. For instance, this case involved a passenger in a vehicle while *Damm* involved the driver. Even more importantly, here, the detention of the passenger was motivated by the need to secure the names of witnesses to the incident. That is not the case in *Damm*.

The trial court held that *Damm* did not apply and distinguished it as follows:

"In the Damm case the passengers were requested to provide identification and did so. They all provided—at least under the facts as stated in the case, provided their driver's license or other identification. In this case the only identification the defendant made was an oral identification, which the officer testified that his purpose was to verify the oral identification. The defendant produced no positive identification. In fact, as it turned out the defendant provided false personal information. The officer has a right to verify, either by the production of documents or by following up on [an] oral identification, to know who the potential witnesses to the particular offense are. In this case he was merely checking the identification and was not reviewing a verified identification document or running it for a record check or for—checking it for warrants, which was the express purpose for detaining the passengers [in] the Damm case. There is no unlawful intention under the circumstances. I don't read Damm as saying there was a blanket yet bright line rule that under no circumstances could—passengers are required to identify themselves. This was merely—also, since they're required to identify themselves and this is a—distinguishable from Damm on that basis.

"Secondly in the Damm case the—the driver Damm was the driver of the vehicle who was arrested after a search of his vehicle pursuant to the arrest of a passenger and here the driver's not implicated whatsoever. Mr. Jones was the passenger in the car who had no identification and who was detained for verification of his identity only. Under the circumstances of this case that detention was of short duration and was of—for a reasonable and lawful purpose and was not unreasonable. And the case is distinguishable and the motion to suppress is denied."

We also rely on the United States Supreme Court's opinion in *Maryland v. Wilson*, 519 U.S. 408, 137 L. Ed. 2d 41, 117 S. Ct. 882 (1997). In that case, a vehicle was stopped for not having a license tag as well as other reasons. During the course of the stop, the passenger was ordered out of the vehicle by the police officer. As the passenger exited the vehicle, a quantity of crack cocaine fell to the ground. The passenger was arrested and prosecuted for pos-

session of cocaine. Defendant sought to suppress the evidence against him on the grounds that the trooper's act in ordering him out of the car was an unreasonable seizure. The trial court granted the motion and was affirmed by the Court of Special Appeals of Maryland. See *State v. Wilson*, 106 Md. App. 24, 664 A.2d 1, *cert. denied* 340 Md. 502 (1995).

The United States Supreme Court granted certiorari and reversed the decision of the Maryland state courts. The Supreme Court held that an officer making a traffic stop, "may order passengers to get out of the car pending completion of the stop." 519 U.S. at 415.

In the *Wilson* decision, the Supreme Court extended its decision in *Pennsylvania v. Mimms*, 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977), to apply to passengers. "In this case we consider whether the rule of [*Mimms*], that a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle, extends to passengers as well. We hold that it does." 519 U.S. at 410. We note that as a result of the decision in *Wilson*, a police officer may, *as a matter of course, order the passengers to exit a lawfully stopped vehicle*.

The court went on to explain its holding in *Mimms* as follows:

"We reversed, explaining that '[t]he touchstone of our analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security,' " 434 U.S., at 108-109, (quoting *Terry v. Ohio*, 392 U.S. 1, 19 [1968]), and that reasonableness 'depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers,' " 434 U.S. at 109 (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 [1975]). On the public interest side of the balance, we noted that the State 'freely concede[d]' that there had been nothing unusual or suspicious to justify ordering Mimms out of the car, but that it was the officer's 'practice to order all drivers [stopped in traffic stops] out of their vehicles as a matter of course' as a 'precautionary measure' to protect the officer's safety. 434 U.S. at 109-110. We thought it 'too plain for argument' that this justification—officer safety—was 'both legitimate and weighty.' *Id.*, at 110. In addition, we observed that the danger to the officer of standing by the driver's door and in the path of oncoming traffic might also be 'appreciable.' *Id.*, at 111." 519 U.S. at 411-12.

The Supreme Court went on to explain:

"We must therefore now decide whether the rule of *Mimms* applies to passengers as well as to drivers. On the public interest side of the balance, the same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger. Regrettably, traffic stops may be dangerous encounters. In 1994 alone, there were 5,762 officer assaults and 11 officers killed during traffic pursuits and stops. Federal Bureau of Investigation, Uniform Crime Reports: Law Enforcement Officers Killed and Assaulted 71, 33 (1994). In the case of passengers, the danger of the officer's standing in the path of oncoming traffic would not be present except in the case of a passenger in the left rear seat, but the fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer.

"On the personal liberty side of the balance, the case for the passengers is in one sense stronger than that for the driver. There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers. But as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment. It would seem that the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop. And the motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver." 519 U.S. at 413-14.

Finally, the court announced its holding:

"In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." 519 U.S. at 414-15.

Although the court emphasizes the danger to the police officer, the authority to order a passenger from a vehicle is authority granted as a matter of course and, in our judgment, does not depend upon whether the officer felt threatened by the presence of the passenger. Our conclusion is that *Wilson* is an example of the relaxation of some of the more inflexible search and seizure rules that were stated in earlier decisions. In reasoning by analogy, we conclude that if an officer has the right to order a passenger out

of a vehicle on a routine traffic stop, the officer surely has the right to ask that passenger for identification in order to complete his or her record of the arrest and to note the potential witnesses to that arrest. We also require that the duration of any detention of a passenger be reasonable in view of the circumstances existing.

A police officer's job is to enforce the law. Not only must he or she arrest lawbreakers, the officer must provide the necessary evidence to support his or her actions at trial. In order to do his or her job correctly, an officer must determine the identity of the witnesses to the incident. We hold the securing of names of witnesses is part of the scope of a traffic stop and, if done within the duration of that stop, any evidence obtained as a result is admissible against the driver or a passenger.

It appears that Florida has adopted the rationale stated in this opinion. In *Bratcher v. State*, 727 So. 2d 1114 (Fla. Dist. App. 1999), the facts indicated a police officer made an investigatory stop of a vehicle. In doing so, he ordered the passenger out of the vehicle and, in the process, discovered cocaine on the passenger. The Florida court held that during an investigatory stop, a driver and a passenger in a vehicle can be ordered to exit the vehicle and the evidence found as a result was admissible. In so holding, the Florida court cited both *Mimms* and *Wilson*.

In this case, the passenger was detained for a very short period of time while the police officer attempted to ascertain his identity and run a driver's license check on the driver as well as prepare the traffic ticket. The officer testified he conducted the records check while he was writing the ticket. The total time from stop to arrival at the police station did not exceed 5 minutes. As the United States Supreme Court said in *Wilson*, the additional intrusion on a passenger is minimal since the passengers are already stopped by the stop of the vehicle. 519 U.S. at 414-15.

We conclude that in this case, the officer's actions were all within the scope of the stop of the vehicle and that no unlawful or unconstitutional seizure of the passenger took place. Accordingly, we affirm the decision of the trial court.

Affirmed.