No. 96,126

STATE OF KANSAS, *Appellee*, v. PAUL B. MARTIN, *Appellant*.

(179 P.3d 457)

Opinion filed March 28, 2008.

*Juanita M. Carlson*, of Carlson Law Office, P.A., of Lawrence, argued the cause and was on the brief for appellant.

*Brenda J. Clary*, assistant district attorney, argued the cause, and *Deborah L. Moody*, assistant district attorney, *Charles Branson*, district attorney, and *Phill D. Kline*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: In his prosecution for possession of marijuana, Paul B. Martin unsuccessfully moved to suppress the evidence retrieved from his pocket. On appeal, the Court of Appeals reversed the district court and found that the evidence should have been suppressed. *State v. Martin*, No. 96,126, unpublished opinion filed February 16, 2007.

The State of Kansas seeks review, claiming that the Court of Appeals erred in failing to consider how the discovery of Martin's outstanding arrest warrant should affect the lawfulness of the search and that the Court of Appeals erroneously based its decision upon a theory that was not presented to the district court or briefed on appeal. Finding that the discovery of the arrest warrant presented an intervening event which removed the taint of the illegality of the preceding unlawful detention, we reverse.

The Court of Appeals succinctly described the factual background as follows:

"After officers observed a man exhibiting physical activity similar to that of someone attempting to urinate, they confronted the man and asked if that was his intent. He admitted his intent to urinate, and one of the officers told him, 'You were honest, why don't you just get out of here.' The man mounted his bicycle and rode away. The officers then noticed a second bicycle and saw Martin standing about 20 feet away. Although the arresting officer would later admit that he 'didn't see [Martin's] motion' and '[didn't] know what he intended to do,' the officers 'stopped' Martin and asked for his identification. Martin was cooperative, identified himself, and provided his date of birth. When the officers ran his name and birthdate through dispatch, they discovered an outstanding warrant for his arrest. Upon Martin's arrest the officers searched his person and found an Altoids tin containing a substance confirmed as marijuana." *Martin*, slip op. at 2.

In the ensuing prosecution for possessing the marijuana, Martin moved to suppress the evidence. Although defense counsel conceded that the initial encounter was permissible, Martin's attorney argued that the encounter became an unlawful detention when the

officer called dispatch for a wants and warrants check. The district court announced that, because the defense had raised no issue as to the initial stop, the court would not address it. Declaring that it is always permissible for an officer to run a warrant check, the district court denied the motion to suppress.

Martin was convicted of possession of marijuana at a bench trial upon stipulated facts at which Martin preserved the suppression issue for appeal. Upon direct appeal, the Court of Appeals noted trial counsel's concession that the initial stop was a voluntary encounter, but opined that it "[disagreed] that any stop was justified." Slip op. at 4-5. Nevertheless, the Court of Appeals proceeded to analyze whether the encounter lost its consensual nature and became unlawful when the officers detained Martin to conduct a wants and warrants check. The Court of Appeals concluded:

"Whether one focuses upon the initial stop or the detention as an extension of a purported voluntary encounter, we conclude that Martin should not have been detained for a wants and warrants check under these circumstances, and we reverse the district court's refusal to suppress the evidence revealed during the subsequent search of his person." Slip op. at 6.

In its petition for review, the State argues that the Court of Appeals erred by: (1) failing to consider the controlling authority of *State v. Jones*, 270 Kan. 526, 17 P.3d 359 (2001); and (2) reversing the district court based upon a theory which was not presented to the district court or briefed on appeal. We take the liberty of considering the issues in reverse order.

## BASIS FOR COURT OF APPEALS DECISION

The State complains that neither the district court nor the Court of Appeals was presented argument on the theory used by the appellate court to reverse the denial of the suppression motion. We disagree.

As the State points out in its review petition, the suppression motion alleged that the officer checked with dispatch without having "reasonable, articulable suspicion that the defendant had been committing a crime, was about to commit a crime or had committed a crime." Trial counsel argued that, although the encounter was permissibly initiated, it became unlawful when the officer de-

tained Martin to run the warrant check. In his brief to the Court of Appeals, one of Martin's issues was stated as "[w]hether Mr. Martin's encounter with Officer Walter initially was a voluntary encounter then became an illegal investigatory detention when the officer ran a warrant check without reasonable articulable suspicion."

As noted above, the Court of Appeals analyzed the very issue presented, *i.e.*, whether the officer was unlawfully detaining Martin when the officer ran the warrant check. Even if the opinion's discussion of the legality of the initial encounter is gratuitous, the ultimate holding directly addressed the theory of unlawfulness presented to both the district court and the Court of Appeals.

The State also argues that because of the manner in which the issue was presented below, it was denied the opportunity "to present evidence to prove the lawfulness of the encounter or provide details regarding the sequence and timing of events." Pointedly, however, the State begins by reciting the provisions of K.S.A. 22-3216(2), which specifically provides that "the burden of proving that the search and seizure were lawful shall be on the prosecution." Once Martin raised the issue of the lawfulness of extending the encounter to run a wants and warrants check, the State had the burden of proving the actions of law enforcement were lawful. That burden would include the detailing of the sequence and timing of events in order to prove that the extended encounter was not an unlawful detention. In short, the State had ample notice and opportunity to address the specific issue and theory upon which the case was decided.

## THE EFFECT OF THE OUTSTANDING WARRANT

In its brief to the Court of Appeals, the State argued that the encounter remained voluntary up to the time that the outstanding warrant was discovered and Martin was arrested on that warrant. However, it also relied on its *Jones* argument that the officers had a right to arrest Martin upon discovering the outstanding warrant, regardless of whether Martin was being unlawfully detained when the warrant was discovered. See *Jones*, 270 Kan. at 527.

In its petition for review, the State does not present any argument as to whether Martin was being unlawfully detained during the warrant check. Rather, the petition for review asserts that the Court of Appeals' error was in failing to apply the holding in *Jones*. Specifically, the petition recites:

"While the State does not concede that Martin was detained, legally or otherwise, the holding in *Jones* dictates that even if he had been unlawfully detained, the arrest was lawful, and consequently, the evidence obtained during a search incident to the arrest was lawfully obtained."

Although the State purports to disavow any concession with respect to the Court of Appeals' determination that Martin was unlawfully detained for a wants and warrants check, its failure to present any argument on the question effects the same result. See *State v. Walker*, 283 Kan. 587, 594, 153 P.3d 1257 (2007) (an issue not briefed is deemed waived or abandoned). Indeed, consideration of the State's review petition issue on the applicability of the *Jones* holding would be rendered unnecessary without the existence of an unlawful detention. Therefore, we will restrict our analysis to the question the State has presented us upon review, *i.e.*, whether the discovery of an outstanding arrest warrant during an unlawful detention is an intervening event which removes the taint of the unlawful detention from evidence retrieved in a search incident to the warrant arrest.

### The Jones Decision

Because the State relies exclusively on *Jones*, we pause to review that decision in some detail. The *Jones* scenario began with a traffic stop of a speeding vehicle in which Jones was a passenger. The detaining law enforcement officer asked for Jones' driver's license, in addition to that of the vehicle driver. Jones denied having any identification, but provided his name and birth date. The officer testified that his "standard operating procedure" was to obtain identification and run a records check on all passengers in a stopped vehicle so that they would be available to testify in any court proceeding that might arise from the traffic citation. After being advised by dispatch that Jones had an outstanding warrant, the officer asked Jones to exit the vehicle. Jones exited, but then

fled on foot. After he caught Jones, the officer searched Jones' coat and discovered narcotics and drug paraphernalia, for which Jones was prosecuted and convicted.

On appeal, the Court of Appeals, after considering whether the district court should have granted Jones' motion to suppress the evidence, affirmed the convictions. *State v. Jones*, 27 Kan. App. 2d 476, 5 P.3d 1012 (2000). The Supreme Court granted review and commenced its opinion by declaring that "[t]he sole issue in this case is whether Jones' Fourth Amendment rights were violated when a law enforcement officer asked him his name and date of birth after a routine traffic stop in which Jones was a passenger and not the driver of the vehicle." *Jones*, 270 Kan. at 526. However, the *Jones* court did not specifically address Jones' argument that an officer's asking for a passenger's name and date of birth during a routine traffic stop violates the passenger's Fourth Amendment right to be free from an unreasonable search and seizure. Rather than answering the question of whether Jones was being unlawfully detained, the *Jones* court simply said:

"The problem with Jones' argument in this case is that once [the officer] determined there was a warrant out for Jones' arrest, [the officer] had a right to arrest Jones, whether he had been lawfully or unlawfully detained at that point in time. Once [the officer] had a right to lawfully arrest Jones on the outstanding warrant, [the officer] had a right to search him incident to the arrest. See *United States v. Green*, 111 F.3d 515, 521 (7th Cir. 1997)." 270 Kan. at 527-28.

The *Jones* opinion then quotes from *Green*, a 7th Circuit case which found that the lawful arrest of a passenger upon an outstanding warrant " 'constituted an intervening circumstance sufficient to dissipate any taint caused by the illegal automobile stop.' " *Jones*, 270 Kan. at 528 (quoting *United States v. Green*, 111 F.3d 515, 521 [7th Cir. 1997]). *Jones* goes on to briefly mention and quote from an Illinois Court of Appeals case, *People v. Murray*, 312 Ill. App. 3d 685, 691-92, 728 N.E.2d 512 (2000), which declared that " '[i]t would be illogical and nonsensical for us to hold that once the police illegally stop an automobile, they can never arrest an occupant who is found to be wanted on a warrant.' " The brief analysis in *Jones* concludes by stating the holding in a Louisiana Supreme Court case, *State v. Hill*, 725 So. 2d 1282 (La. 1998),

"that the discovery of an outstanding arrest warrant constitutes an 'intervening circumstance' which dissipates the taint of an initial impermissible encounter," and by listing the cases upon which the Louisiana Supreme Court relied. *Jones*, 270 Kan. at 528-29.

The final paragraph in *Jones* recites:

"We hold that there is no evidence of bad faith on the part of [the law enforcement officer]. Once [the officer] learned of the outstanding warrant, he had a right and duty to arrest Jones. Subsequent to the arrest, [the officer] had the right to search Jones. We affirm the trial court and Court of Appeals." 270 Kan. at 529.

The opinion does not flesh out the significance of its holding that the officer did not act in bad faith, in light of the court's earlier suggestion that the discovery of an outstanding warrant is a bright line event rendering immaterial any inquiry into the lawfulness of the detention at the time of the warrant's discovery. Perhaps more curious is the court's reliance on decisions from foreign jurisdictions without mentioning its own prior decisions, especially *State v. Damm*, 246 Kan. 220, 787 P.2d 1185 (1990).

Before proceeding to discuss *Damm*, we pause to note that Martin argued and the Court of Appeals analyzed the factual distinction between a vehicle stop, as in *Jones*, and an encounter on the street, as presented here. The distinction may be important to the detention analysis, given that we have declared every vehicle stop to be a detention, *State v. Mitchell*, 265 Kan. 238, Syl. ¶ 2, 960 P.2d 200 (1998) ("A traffic stop is a seizure within the meaning of the Fourth Amendment."), while an encounter on the street is not always deemed a detention. See *State v. Lee*, 283 Kan. 771, Syl. ¶ 2, 156 P.3d 1284 (2007) ("A voluntary or consensual encounter is the only type of encounter between citizens and law enforcement officers that does not implicate the protection of the Fourth Amendment."). However, the starting point for our discussion is that Martin was unlawfully seized when the outstanding warrant was discovered. Therefore, the distinction between a vehicle stop and a street encounter does not affect our analysis.

*The Damm Decision*

In *Damm*, an officer stopped the vehicle Damm was driving because of defective taillights. The officer gathered the driver's

licenses from Damm and his two passengers and returned to the patrol car to do a "routine records check." The officer discovered an outstanding warrant on one of the passengers, who was then arrested and placed in the patrol car. The officer returned to the stopped vehicle and searched it incident to the passenger's arrest. After discovering drug paraphernalia and cocaine in the vehicle, all three occupants were arrested for drug possession.

In upholding the district court's suppression of the evidence, the *Damm* court found that the officer "had no reasonable justification for requiring identification of the passengers and running record checks on them." 246 Kan. at 224-25. Thus, the seizure of all three vehicle occupants, including the driver, was rendered unreasonable because it exceeded the scope and duration justified by the traffic stop. The court then explained:

"Without the unreasonable detention, the officer had no reason to arrest [the passenger with an outstanding warrant] or [Damm and the other passenger]. Without the arrest, there could be no search. Without the search, there was no evidence against Damm. The detention and search being unlawful, the evidence is inadmissible as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Epperson*, 237 Kan. at 719." *Damm*, 246 Kan. at 225.

*Reconciliation*

*Damm* employed a "but for" analysis to determine that everything following the unreasonable seizure was fruit of the poisonous tree under *Wong Sun*, and, thus, inadmissible. The opinion focused on the fact that the officer would not have *learned* of the outstanding warrant without first unlawfully seizing the passenger. *Damm* does not consider the dilemma presented by the officer's acquisition of that knowledge.

The discovery of an outstanding arrest warrant informs the law enforcement officer that a judge has found "that there is probable cause to believe both that a crime has been committed and that the [subject of the warrant] has committed it." K.S.A. 22-2303(1). The officer would understand that it would be his or her duty to execute that warrant by arresting the person named in the warrant. See K.S.A. 22-2305. The *Damm* court did not clarify whether the preceding unlawful detention rendered the warrant arrest unlawful

or just precluded prosecution for the resulting new crime revealed by the search incident to the arrest. However, given that the warrant was issued upon a probable cause showing that had nothing to do with the unlawful detention and the officer is commanded by a judge to execute the warrant by arresting the fugitive, one must conclude that the arrest on the warrant is not invalidated by the unlawful detention.

The State does not discuss *Damm*, but rather it takes the position that both the warrant arrest and the new prosecution are permissible. The State perceives that the unstated, underlying rationale of *Jones* is that "Martin had no liberty to be protected" because "a judge had signed a warrant ordering Martin's arrest." While the State may wish that to be so, *Jones'* holding of an absence of officer bad faith would make no sense if Jones possessed no liberty interest to protect. Moreover, such an inference cannot be reconciled with *Damm*, which found that the passenger subject to an outstanding warrant in that case was nevertheless unreasonably seized. Such a finding necessarily presupposes that the passenger had a protected liberty interest which could be violated notwithstanding the existence of an outstanding warrant.

We perceive that *Damm* and *Jones* are reconciled by recognizing that neither case establishes a bright line rule. The discovery of an outstanding arrest warrant does not always automatically wipe the slate clean for an officer unlawfully detaining the subject of the warrant. On the other hand, an unlawful detention that begets knowledge of an outstanding arrest warrant does not always automatically immunize the fugitive from prosecution for crimes discovered during the warrant arrest. In that regard, we note that the exclusionary rule is not absolute.

" 'We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. Maguire, Evidence of Guilt, 22 (1959)." [*Wong Sun v. United States*,] 371 U.S. at 487-88.' " *State v. Hodges*, 252 Kan. 989, 1006, 851 P.2d 352 (1993).

Under the attenuation doctrine, courts have found that the poisonous taint of an unlawful search or seizure dissipates when the connection between the unlawful police conduct and the challenged evidence becomes attenuated. *Nardone v. United States*, 308 U.S. 338, 84 L. Ed. 307, 60 S. Ct. 266 (1939). Although the *Jones* opinion did not explicitly apply the attenuation doctrine, that doctrine appears to be the only way to explain its reference to officer bad faith and to reconcile it with the holding in *Damm*.

The *Green, Murray*, and *Hill* cases relied upon by *Jones* cite to *Brown v. Illinois*, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975), which applied three factors to determine whether the causal chain has been sufficiently attenuated, so as to dissipate the taint of illegal conduct. Those factors are (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Brown*, 422 U.S. at 603-04. Presumably, *Jones*' holding of an absence of officer bad faith referred to the third factor. However, all of the factors appear to be germane to the important determination of whether the State can avoid the exclusionary rule for its agents' unlawful conduct.

Below, neither the district court nor the Court of Appeals engaged in a taint analysis. Nevertheless, we are empowered to do so, if given a sufficient record on appeal. See *State v. Gonzales*, 36 Kan. App. 2d 446, 459, 141 P.3d 501 (2006); *State v. Crowder*, 20 Kan. App. 2d 117, 122, 887 P.2d 698 (1994).

The first factor weighs heavily against the State. Indeed, at oral argument, the State emphasized the short amount of time which elapsed between the initial encounter and the arrest with accompanying search. The law enforcement officers' actions were continuous; there was no temporal break in the causal chain between illegality and evidence acquisition. However, *Brown* instructed that "[n]o single fact is dispositive" in determining whether the evidence should be suppressed. *Brown*, 422 U.S. at 603; see *Green*, 111 F.3d at 521.

The second factor, the presence of intervening circumstances, brings the outstanding arrest warrant into play. Under that circumstance, the law enforcement officer was put on notice that a court

had determined there was probable cause to believe that Martin had committed a crime and that the court had issued an order for law enforcement to take Martin into custody. The warrant arrest of Martin was a lawful, perhaps mandatory, act. Thereupon, K.S.A. 22-2501 permitted, and officer safety recommended, that the officer search Martin's person. Thus, the lawful warrant arrest for a prior crime, and ensuing lawful search incident to arrest, represent a potential break in the causal chain between the unlawful conduct of illegally detaining Martin and the retrieval of the challenged evidence.

The third factor, the purpose and flagrancy of the official misconduct, dovetails with the second factor in this case. The determination of whether the intervening circumstance of discovering an outstanding warrant should attenuate the taint of a preceding unlawful detention should be influenced by the officers' reasons for detaining the subject and the flagrancy of the invasion on the subject's privacy. In other words, did the officer exploit the unlawful conduct to get to the contraband. *Cf. United States v. Melendez-Garcia*, 28 F.3d 1046, 1055 (10th Cir. 1994) ("[T]he 'purpose and flagrancy' prong of the *Brown* test can only be aimed at exploring whether the police have exploited their illegal search.").

While the circumstances might suggest that the officers' purpose in requesting identification to run a warrant check was a fishing expedition, we do not perceive the conduct to be flagrant. The officers were drawn to the particular location because they observed a man who admitted to urinating or attempting to urinate in public. There is nothing to suggest that the officers' ultimate goal in making contact with Martin, who was in the immediate vicinity of the urinator, was to search his person for drugs. Indeed, that suggestion is belied by the officers' treatment of the lawbreaker, who was simply sent on his way after admitting to his transgression. Further, the intrusion upon Martin's privacy involved a brief conversation in which Martin cooperatively engaged. But *cf. State v. Epperson*, 237 Kan. 707, 712, 703 P.2d 761 (1985) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 [1975]) (even a brief detention is a seizure implicating Fourth Amendment).

Accordingly, we find that, considering the minimal nature and extent of the official misconduct, the outstanding arrest warrant was an intervening circumstance which sufficiently attenuated the taint of the unlawful detention so as to permit the admission of the fruits of the search incident to arrest.

Judgment of the Court of Appeals is reversed. Judgment of the district court is affirmed, and the case is remanded for further proceedings.