(202 P.3d 685)
No. 99,457

STATE OF KANSAS, *Appellee,* v. MAURICE J. WALKER, *Appellant.*

Opinion filed February 27, 2009.

*Ryan Eddinger,* of Kansas Appellate Defender Office, for appellant.

*Robbin L. Wasson,* assistant district attorney, *Jerome Gorman,* district attorney, and *Stephen N. Six,* attorney general, for appellee.

Before ELLIOTT, P.J., GREEN and MARQUARDT, JJ.

MARQUARDT, J.: Maurice J. Walker appeals his convictions of possession of cocaine and possession of marijuana. We affirm.

On September 16, 2006, Kansas City Police Officer Jason Pittman responded to a report of an automobile burglary. The victim did not speak English; however, two children translated the victim's description of the suspect as "a black male wearing a black shirt and black shorts" last seen walking east on Central Avenue.

Traveling east on Central Avenue, Officer Pittman began searching for an individual who matched the suspect's description. Within blocks of the reported burglary, Officer Pittman saw Walker, a black male wearing a black shirt and black shorts, sitting next to a bus stop.

Officer Pittman approached Walker, informed him that he matched the description of a burglary suspect, and requested identification. Walker provided Officer Pittman with a Missouri identification card. Officer Pittman contacted dispatch and requested a records check. Dispatch reported that Walker had an outstanding arrest warrant. Officer Pittman handcuffed Walker and placed him under arrest.

In searching Walker, Officer Pittman discovered a plastic bag with suspected marijuana in it and a plastic bag containing suspected cocaine. Another officer conducted a field test of the two substances and confirmed that the substances were marijuana and cocaine. The automobile burglary victim could not identify Walker as the suspect.

Walker filed a motion to suppress the evidence of the drugs based on the lack of a warrant and the lack of probable cause to search. Walker argued that Officer Pittman contacted dispatch and learned of Walker's outstanding warrant after illegally searching and finding marijuana and cocaine. Walker also claimed that the victim's description of the burglar was "grossly inadequate [for Officer Pittman] to go start talking to people," Walker's counsel argued that Walker did not match the suspect's description because Walker's shirt was actually dark blue, not black, and had a picture of Mickey Mouse on the front.

In overruling Walker's motion, the district court found that Officer Pittman approached an individual who matched the burglary suspect's description, ascertained Walker's identity, and subsequently made a legal arrest based on an outstanding warrant. The

district court also found that the search and arrest were constitutional.

At trial, Walker testified that while walking through an alley to get to his cousin's house, a young child placed cocaine in his hand and ran away. Walker decided to continue to his·cousin's house where he planned to flush the cocaine down the toilet.

Walker also testified that while waiting at a bus stop, Officer Pittman approached him, asked for identification, then placed him in handcuffs. Officer Pittman began searching Walker's backpack for his identification.

Walker also testified that the automobile burglary victim told a different officer that Walker was not the suspect and the officer told Officer Pittman to release Walker. According to Walker, Officer Pittman told the other officer that he would not release Walker and radioed dispatch for a records check. After being informed of the outstanding warrant, Officer Pittman searched Walker and found the marijuana and cocaine.

A jury convicted Walker of possession of cocaine and possession of marijuana. The district court sentenced Walker to a presumptive sentence of 17 months in prison for his cocaine possession and 12 months' incarceration for his marijuana possession, then converted the sentence to 12 months' probation with 12 months of post-release supervision.

Walker did not file a motion for a new trial; however, he appeals the district court's denial of his motion to suppress, claiming: (1) Officer Pittman lacked reasonable suspicion to detain him; (2) the search exceeded the investigatory nature of the stop; and (3) the subsequent discovery of his outstanding warrant did not purge the taint of the illegal detention.

When reviewing a district court's decision on a motion to suppress evidence, this court first determines whether substantial competent evidence supports the district court's findings; however, the appellate court does not reweigh the evidence. Next, we review the district court's ultimate legal conclusion respecting the suppression of evidence using a de novo standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

## A. Reasonable Suspicion to Detain Walker

Walker argues that Officer Pittman lacked reasonable suspicion to seize him based on an "extremely deficient" physical description. Walker cites K.S.A. 22-2402(1) and *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), to suggest that absent specific articulable facts, Officer Pittman did not have reasonable suspicion to stop Walker.

K.S.A. 22-2402(1) provides that a law enforcement officer, without making an arrest, "may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions." This provision is a codification of *Terry*, 392 U.S. at 21. See *City of Topeka v. Grabauskas*, 33 Kan. App. 2d 210, 220, 99 P.3d 1125 (2004).

There are four types of police-citizen encounters. See *State v. Gonzales*, 36 Kan. App. 2d 446, 451, 141 P.3d 501 (2006). The first is a voluntary encounter, which is not considered a seizure under the United States Constitution's Fourth Amendment. *Nickelson v. Kansas Dept. of Revenue*, 33 Kan. App. 2d 359, 363, 102 P.3d 490 (2004). The second is an investigatory detention or *Terry* stop, in which an officer may detain any person in a public place if the officer reasonably suspects that the person is committing, has committed, or is about to commit a crime. See *Terry*, 392 U.S. at 24, 30-31. During a *Terry* stop, the officer is allowed to frisk the person seized for weapons if necessary for the officer's personal safety. K.S.A. 22-2402(2). The third type is a public safety stop in which an officer may approach a person to check on his or her welfare when the officer can articulate specific facts indicating a concern for the public's safety. *State v. Vistuba*, 251 Kan. 821, 824, 840 P.2d 511 (1992), *disapproved in part on other grounds State v. Field*, 252 Kan. 657, Syl. ¶ 6, 847 P.2d 1280 (1993). The fourth type of encounter is an arrest. *State v. Hill*, 281 Kan. 136, 142, 130 P.3d 1 (2006).

An investigatory detention requires that an officer have a reasonable suspicion, based on objective facts, that the suspect is in-

volved in criminal activity. *State v. Epperson*, 237 Kan. 707, 712, 703 P.2d 761 (1985). Reasonable suspicion requires a minimal level of objective justification. *State v. Moore*, 283 Kan. 344, 354, 154 P.3d 1 (2007) (quoting *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 [1998]). Something more than an unparticularized suspicion or hunch must be articulated. *DeMarco*, 263 Kan. 727 Syl. ¶ 4.

At the suppression hearing, Officer Pittman testified that the victim described the suspect as "a black male wearing a black shirt and black shorts." Within minutes after the crime, Officer Pittman checked the area and found Walker, a black male wearing a midnight blue shirt and black shorts, 2 blocks from the crime scene. The district court concluded that Walker matched the general description of the automobile burglary suspect. Given Walker's proximity in time and location to the crime and that Walker matched the general description of the burglary suspect, the district court's decision is supported by substantial competent evidence.

This court in *State v. Anguiano*, 37 Kan. App. 2d 202, 151 P.3d 857 (2007), discussed reasonable suspicion with regard to a suspect's "semifit" description. In *Anguiano*, an arrest warrant was issued for a Hispanic suspect who "wore a coat and 'dark-type green' colored pants." On St. Patrick's Day 2005, police officers apprehended Anguiano, a Hispanic man who wore grayish-green pants, not dark green pants. In reversing the district court's denial of his motion to suppress, this court stated that "merely being Hispanic and wearing a coat with green pants may have described much of the population of Seward County on St. Patrick's Day, March 17, 2005." 37 Kan. App. 2d at 207. This court determined that the warrant's description was "so nonspecific or generic in nature as to defy reasonable suspicion of criminal activity." 37 Kan. App. 2d at 207.

Although the facts in *Anguiano* are similar to the instant case, *Anguiano* is distinguishable. In *Anguiano*, the sole basis for his detention was a "semifit" general description. Here, the victim gave Officer Pittman the direction the suspect was last seen traveling. The crime occurred only a few minutes prior to Officer Pittman's arrival. And unlike in *Anguiano*, September 16 is not tradi-

tionally a day when individuals dress similarly by wearing dark-colored clothes.

Under the totality of the facts and circumstances in this case, Officer Pittman had a reasonable suspicion based on articulable facts that Walker had just committed the automobile burglary, which allowed him to lawfully request Walker's identification during the investigatory detention. The district court did not err in denying Walker's motion to suppress evidence.

### B. Was the Extension of the Investigatory Stop an Illegal Detention?

Walker argues that even if Officer Pittman had reasonable suspicion to detain him, Office Pittman lacked justification for performing a records check. Citing *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983), Walker suggests that Officer Pittman abandoned his initial investigation of whether Walker was the alleged burglary suspect when he conducted a general records check and "unnecessarily prolonged the encounter."

The State claims that K.S.A. 22-2402(1) clearly allows a law enforcement officer to ask for identification during a stop. The State asserts that Officer Pittman merely approached Walker and asked for his identification, which Walker voluntarily provided.

A seizure's scope and duration "must be strictly tied to and justified by the circumstances that rendered its initiation proper." *State v. Damm*, 246 Kan. 220, 224, 787 P.2d 1185 (1990).

K.S.A. 22-2402(1) allows an officer to ask for identification during a stop, but the statute does not state that an officer may run a warrants check. Kansas case law allows police officers, during routine traffic stops, to check a "motorist's driver's license, car registration, and proof of insurance; conduct a computer check; issue a citation; and take those steps reasonably necessary to protect officer safety." *State v. Smith*, 286 Kan. 402, 410, 184 P.3d 890 (2008). There is no Kansas statute or case that deals with a police officer running a warrants check during a street encounter.

Finding no Kansas case directly on point, the United States Court of Appeals for the Tenth Circuit recently decided the specific issue of whether a wants and warrants check during an inves-

tigatory detention exceeded the initial scope of the detention. See *United States v. Villagrana-Flores*, 467 F.3d 1269 (10th Cir. 2006), *cert. denied* 549 U.S. 1149 (2007).

In *Villagrana-Flores*, police responded to a call from a Denny's restaurant patron stating that " 'a man outside was trying to kill himself.' " 467 F. 3d at 1272. The police identified the man as Villagrana-Flores. An ambulance transported Villagrana-Flores to a nearby hospital for an emergency mental health evaluation. After his release, Villagrana-Flores walked to a nearby office building and entered a stairwell. Observers stated that Villagrana-Flores appeared delusional and disoriented and was talking to door knobs. An individual called the police when Villagrana-Flores began hitting his head against the office building's windows and walls.

Police officers detained Villagrana-Flores because he "was a danger to himself and possibly to others" and ran a warrants check. 467 F.3d at 1272. Finding outstanding warrants, the police placed Villagrana-Flores under arrest. Villagrana-Flores appealed and claimed, *inter alia*, that police violated his constitutional rights when they ran a warrants check, exceeding the permissible scope of the initial detention—*i.e.*, for exhibiting mentally ill behavior. Finding no violation of the Fourth Amendment, the court stated:

> "Officer safety, however, is just as strongly implicated where the individual being detained for a short period of time is on foot, rather than in an automobile. An officer detaining a pedestrian has an equally strong interest in knowing whether that individual has a violent past or is currently wanted on outstanding warrants. The citizen's interest, on the other hand, is no more robust merely because a short detention occurs while traversing on foot. Moreover, permitting a warrants check during a *Terry* stop on the street also 'promotes the strong government interest in solving crimes and bringing offenders to justice.' [Citation omitted.] Indeed, an identity's utility in 'inform [ing] an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder,' [citation omitted], would be non-existent without the ability to use the identity to run a criminal background check." 467 F.3d at 1277.

Thus, applying the reasoning in *Villagrana-Flores*, we hold that permitting a warrants check during a *Terry* investigatory stop on the street promotes the strong government interest in solving crimes and bringing offenders to justice. Officer Pittman's inves-

tigatory detention did not exceed the permissible scope of Walker's detention.

## C. Did the Discovery of the Warrant Cure the Extension of the Detention?

Walker claims that under *State v. Martin*, 285 Kan. 994, 179 P.3d 457 (2008), the subsequent discovery of an outstanding warrant did not cure the taint of the illegal detention. The State contends that even if Officer Pittman's conduct was improper, his subsequent discovery of Walker's outstanding warrant cured such conduct.

In *Martin*, the Kansas Supreme Court considered three factors in determining whether the taint from illegal conduct has been sufficiently attenuated from the causal chain to cure the improper conduct: (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. 285 Kan. at 1003.

According to Officer Pittman, upon learning of Walker's outstanding warrant, Officer Pittman immediately handcuffed and searched Walker for weapons and illegal contraband. Thus, very little time elapsed between the detainment and Officer Pittman's discovery of Walker's cocaine and marijuana.

When Officer Pittman learned of Walker's outstanding warrant, he was placed on notice that there was probable cause to believe that Walker had committed a crime. The *Martin* court recognized that a warrant arrest "was a lawful, perhaps mandatory, act" and "K.S.A. 22-2501 permitted, and officer safety recommended" that Officer Pittman search Walker after discovery of the warrant. See 285 Kan. at 1004. The *Martin* court noted that "the lawful warrant arrest for a prior crime, and ensuing lawful search incident to arrest, represent a potential break in the causal chain between [any] unlawful conduct" in detaining Walker and the discovery of Walker's possession of illegal narcotics. See 285 Kan. at 1004.

As in *Martin*, Officer Pittman was drawn to Walker because Walker matched the description of a burglary suspect. There is no evidence in the record on appeal that Officer Pittman's purpose

for the stop was to search Walker for drugs. Additionally, requesting identification for a warrants check is not flagrant conduct. See *Martin*, 285 Kan. at 1004.

Thus, there was substantial competent evidence to support the district court's decision that an officer's request for identification after an investigatory stop to run a warrants check is not illegal, and the search and seizure did not violate Walker's constitutional rights.

Affirmed.