IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,237

STATE OF KANSAS,
*Appellant*,

v.

ERICA RENEE TATRO,
*Appellee*.


SYLLABUS BY THE COURT


1.

Under the exclusionary rule, if a criminal defendant challenges the State's use of evidence obtained in violation of the Fourth Amendment to the United States Constitution, a court may suppress the primary evidence obtained as a direct result of an illegal search or seizure and evidence later discovered and found to be derivative of an illegality. But the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons. Instead, to trigger the exclusionary rule, police conduct must be sufficiently deliberate, reckless, or grossly negligent, or, in some circumstances, recurring or systemic negligence, so that exclusion can meaningfully deter it.


2.

The attenuation doctrine is an exception to the exclusionary rule. It applies when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.

1

3.

No bright-line rule defines when the attenuation doctrine applies. Rather, courts must examine the particular facts of each case and determine whether those circumstances attenuate the taint of illegality.

4.

When a party appeals a ruling based on the attenuation doctrine, the appellate court considers a question of fact it must review to determine whether it is supported by substantial competent evidence. Substantial competent evidence possesses both relevance and substance and furnishes a substantial basis in fact from which a court can reasonably resolve the issues. An appellate court does not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence.

5.

The United States Supreme Court has identified three nonexclusive factors for determining whether the attenuation doctrine applies. First, courts look to the temporal proximity between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional seizure. Second, courts consider intervening circumstances. Third, and particularly significant, a court examines the purpose and flagrancy of the official misconduct. No one factor is controlling, and other factors also may be relevant to the attenuation analysis.

6.

Under the attenuation doctrine's temporal proximity factor, a finding of attenuation is not generally appropriate unless substantial time elapses between an unlawful act and the discovery of evidence.

7.

Under *Utah v. Strieff*, 579 U.S. __, 136 S. Ct. 2056, 195 L. Ed. 2d 400 (2016), a valid, preexisting, and untainted arrest warrant is an intervening factor that strongly favors the State. This holding abrogates that portion of *State v. Moralez*, 297 Kan. 397, 415, 300 P.3d 1090 (2013), holding the discovery of a preexisting warrant carries little weight when applying the attenuation doctrine. It does not abrogate other portions of *Moralez*.

8.

Whether the third attenuation factor of purposeful or flagrant misconduct weighs in favor of suppression turns on multiple factors, including whether the officer acted in good faith, committed multiple unconstitutional acts during the unconstitutional seizure, or acted as part of a systemic and recurrent pattern of police misconduct. As to the factor of good faith, the officer's subjective state of mind weighs heavily. Courts should generally find purposeful and flagrant misconduct if: (1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his or her conduct was likely unconstitutional but still engaged in it; and (2) the misconduct was investigatory in design and purpose and executed in the hope that something might turn up.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 13, 2018. Appeal from Saline District Court, RENE S. YOUNG, judge. Opinion filed July 26, 2019. Judgment of the Court of Appeals reversing the district court is reversed, and the case is remanded with directions.

*Brock R. Abbey*, assistant county attorney, argued the cause, and *Ellen H. Mitchell*, county attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellant.

*Joel Ensey*, of Salina Regional Public Defender's Office, of Salina, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Applying the Fourth Amendment to the United States Constitution, the United States Supreme Court has developed a remedy that prohibits the admission of evidence obtained in violation of a person's constitutional rights. That remedy, known as the exclusionary rule, seeks to deter future constitutional violations by police officers and applies only when it furthers the rule's purpose. Several exceptions to the rule define situations in which the Supreme Court has determined the purpose is not served. This appeal focuses on one such exception—the attenuation doctrine. Under this exception, a court may admit evidence obtained as a result of an unconstitutional seizure if the connection between the unconstitutional police conduct and the discovery of the evidence is remote or has been sufficiently interrupted by an intervening circumstance, as long as the police did not commit the misconduct purposefully or flagrantly. See *Utah v. Strieff*, 579 U.S. __, 136 S. Ct. 2056, 2061-64, 195 L. Ed. 2d 400 (2016).

Applying the attenuation doctrine factors defined by the United States Supreme Court, the district court suppressed evidence derived from a search because it found that the search resulted directly from a police officer's unconstitutional seizure of Erica Renee Tatro. The Court of Appeals reversed, holding an intervening circumstance attenuated the taint of an unlawful seizure and thus did not invalidate a later search. *State v. Tatro*, No. 118,237, 2018 WL 1770191, at *1, 4-7 (Kan. App. 2018) (unpublished opinion). On review, we hold the district court erred in failing to consider the officer's discovery of an arrest warrant as a circumstance that intervened between the officer's illegal detention of Tatro and his search of her purse after arresting her on the warrant. But unlike the Court of Appeals, we remand to the district court for further findings of facts. There remain unanswered questions of fact and we remand for the district court to make all appropriate findings of fact under the correct legal standard.

4

A Salina police officer stopped Tatro while she was walking in the middle of a public street at around 3:30 a.m. The stop occurred in a neighborhood the officer considered a high-crime area known for vehicle burglaries. He thought it suspicious that Tatro was walking in the street and using a flashlight but acknowledged the area was very dark and he only observed her using the light to see where she was walking.

The officer stopped Tatro and asked for identification. She could not provide it but told the officer her name. He asked questions about where she lived and worked and whether her roommate had any contact with someone he called, "Shorty." He then conducted a warrant check, which showed Tatro had an outstanding arrest warrant. The officer arrested Tatro based on the warrant. He then seized her purse and conducted a pat-down search of her person. Minutes later, a second officer arrived on scene at which time the first officer searched Tatro's purse and found a small plastic baggie and a pipe, both of which contained methamphetamine residue.

The State charged Tatro with possession of drug paraphernalia. She moved to suppress the evidence derived from the search of her purse, arguing the officer violated her constitutional rights by detaining and searching her. The State responded by asserting the officer initiated a voluntary encounter, not a seizure. The State alternatively argued reasonable suspicion justified the detention if it was a seizure. Finally, the State asserted that even if the seizure violated the Fourth Amendment to the United States Constitution, the United States Supreme Court's attenuation doctrine analysis should be applied and the drug paraphernalia discovered in the search of Tatro's purse should be admitted into evidence. The State argued the officer's discovery of the warrant serves as a critical intervening factor breaking the causal connection between any illegality in the initial stop and the later discovery of evidence in the search incident to arrest.

The district court granted Tatro's motion, finding: (1) the encounter was not voluntary; (2) the officer did not have reasonable suspicion for the stop; and (3) the later discovery of the arrest warrant did not make the evidence admissible under the attenuation doctrine.

The State filed a timely interlocutory appeal. The Court of Appeals upheld the district court's findings that the encounter was involuntary and the officer's detention of Tatro was unsupported by reasonable suspicion. But it reversed the district court's ultimate decision, finding the officer's discovery of the arrest warrant before the search of Tatro's purse presented an intervening cause that justified Tatro's arrest and a search incident to the arrest. See *State v. Tatro*, No. 118,237, 2018 WL 1770191, at *1, 4-5, 7 (Kan. App. 2018) (unpublished opinion).

Tatro timely petitioned for and was granted review by this court. The State did not cross-petition for review of the Court of Appeals' adverse findings. This court's jurisdiction is proper under K.S.A. 20-3018(b) (petition for review of Court of Appeals decision).

ANALYSIS

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. By prohibiting "unreasonable" searches and seizures, the Fourth Amendment inferentially allows "reasonable" ones. Reasonable searches and seizures include those supported by a valid warrant or by one of the warrant-requirement exceptions defined by the United States Supreme Court. *State v. Doelz*, 309 Kan. 133, 140, 432 P.3d 669 (2019). When, as here, a criminal defendant

6

seeks to suppress evidence obtained from a search following a warrantless seizure, the legality of both the seizure and the search present intertwined questions because an unlawful seizure may taint the search and make it unconstitutional. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007); see K.S.A. 22-2402; see also *Terry v. Ohio*, 392 U.S. 1, 18, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). And Tatro presents such an intertwined argument when she argues her unlawful initial detention taints the later search and makes it unreasonable.

As this appeal stands before us, the first step of Tatro's intertwined argument— whether an unreasonable seizure occurred—has been determined. Tatro prevailed on this prong of the argument in the district court. There, the district court rejected the State's argument that the officer acted constitutionally by either (1) initiating a voluntary encounter or (2) detaining Tatro based on reasonable suspicion that she had committed, was committing, or was about to commit a crime. The Court of Appeals affirmed the district court on these points. But it disagreed with the rest of the district court's analysis of the attenuation doctrine issue. See *Tatro*, 2018 WL 1770191, at *4-7.

Tatro sought our review of the Court of Appeals' analysis of the attenuation doctrine. When she filed that petition, the State needed to respond with a cross-petition or conditional cross-petition for review if it wanted us to review the panel's holding that the officer unconstitutionally detained Tatro. See Supreme Court Rule 8.03(c)(3) (2019 Kan. S. Ct. R. 56) ("The purpose of a cross-petition is to seek review of specific holdings the Court of Appeals decided adversely to the cross-petitioner."). It did not, and we thus accept without review the Court of Appeals' holding that the officer unconstitutionally seized Tatro, potentially tainting the officer's later search of her purse. See *State v. Gray*, 306 Kan. 1287, 1292-93, 403 P.3d 1220 (2017) (holding failure to cross petition on adverse holding meant this court would not review it); Supreme Court Rule 8.03(i)(1) (2019 Kan. S. Ct. R. 58) ("[T]he issues before the Supreme Court include all issues

7

properly before the Court of Appeals that the petition for review, cross-petition, or conditional cross-petition allege were decided erroneously by the Court of Appeals.").

As a result, we consider the sole issue presented in Tatro's petition for review: Did the district court properly exclude the evidence obtained in the search of Tatro's purse or, under the attenuation doctrine, did the discovery of an arrest warrant purge the taint of the illegal stop and allow the admission of the alleged drug paraphernalia? Some background on the exclusionary rule and the attenuation doctrine provide context to that issue and our discussion.

Under the exclusionary rule, if a criminal defendant challenges the State's use of evidence obtained in violation of the Fourth Amendment, a court may suppress the "primary evidence obtained as a direct result of an illegal search or seizure" and "evidence later discovered and found to be derivative of an illegality," the so-called "'fruit of the poisonous tree.'" *Segura v. United States*, 468 U.S. 796, 804, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984); see *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) (explaining fruit of poisonous tree doctrine); *State v. Deffenbaugh*, 216 Kan. 593, 598, 533 P.2d 1328 (1975) (same). But "'the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.'" *Brown v. Illinois*, 422 U.S. 590, 599-600, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975) (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 [1974]). Instead, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it . . . . [T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009).

The United States Supreme Court has recognized several exceptions to the exclusionary rule. Some of these "exceptions involve the causal relationship between the unconstitutional act and the discovery of evidence." *Strieff*, 136 S. Ct. at 2061. Here, the State has placed one of those exceptions—the attenuation doctrine—in issue. The attenuation doctrine applies "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" *Strieff*, 136 S. Ct. at 2061 (quoting *Hudson v. Michigan*, 547 U.S. 586, 593, 126 S. Ct. 2159, 165 L. Ed. 2d 56 [2006]); see *Brown*, 422 U.S. at 603.

No bright-line rule defines when the attenuation doctrine applies. Rather, courts must examine the particular facts of each case and determine whether those circumstances attenuate the taint of illegality. *Brown*, 422 U.S. at 603. Given that requirement, when a party appeals a ruling based on the attenuation doctrine, the appellate court considers a question of fact that must be reviewed to determine whether it is supported by substantial competent evidence. See *State v. Smith*, 286 Kan. 402, 420, 184 P.3d 890, *cert. denied* 555 U.S. 1062 (2008). "Substantial competent evidence is that which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved." *State v. Sharp*, 289 Kan. 72, 88, 210 P.3d 590 (2009). In reviewing a district court's factual findings for substantial competent evidence, "[a]n appellate court does not 'reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence.'" *Sharp*, 289 Kan. at 80 (quoting *State v. Harris*, 284 Kan. 560, Syl. ¶ 9, 162 P.3d 28 [2007]); see *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018) (holding appellate review of ruling on motion to suppress raises questions of fact to be reviewed for substantial competent evidence and an ultimate legal conclusion reviewed de novo).

To aid a district court's weighing of the facts, the United States Supreme Court in *Brown*, 422 U.S. at 603-04, identified three factors to be considered in determining whether the attenuation doctrine applies. This court later applied those factors. See *State v. Moralez*, 297 Kan. 397, 415, 300 P.3d 1090 (2013); *State v. Williams*, 297 Kan. 370, Syl. ¶ 9, 300 P.3d 1072 (2013). More recently in *Strieff*, the United States Supreme Court reiterated the *Brown* factors:

> "First, we look to the 'temporal proximity' between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search. Second, we consider 'the presence of intervening circumstances.' Third, and 'particularly' significant, we examine 'the purpose and flagrancy of the official misconduct.'" 136 S. Ct. at 2062.

Pointedly significant to our analysis, no one factor controls, and other factors also may be relevant to the attenuation analysis. See, e.g., *Brown*, 422 U.S. at 600-04 (concluding that giving of *Miranda* warnings, standing alone, cannot support attenuation where confession follows unlawful arrest; but noting that giving *Miranda* warnings is relevant factor to consider in determining whether confession was sufficiently attenuated from unlawful arrest); *State v. Martin*, 285 Kan. 994, 1003, 179 P.3d 457, *cert. denied* 555 U.S. 880 (2008) (noting that no single factor is dispositive).

We turn to the district court's application of these factors.

*Temporal proximity*

As to the first *Brown* factor of temporal proximity, the *Strieff* Court "declined to find that this factor favors attenuation unless 'substantial time' elapses between an unlawful act and when the evidence is obtained." *Strieff*, 136 S. Ct. at 2062. Because just minutes had passed between an illegal detention of Edward Joseph Strieff, Jr., and the

discovery of drug contraband on him, the "short time interval counsel[ed] in favor of suppression." 136 S. Ct. at 2062.

Here, the district court found the first factor weighs in favor of suppression because the evidence was discovered shortly after the unlawful seizure. And the Court of Appeals affirmed this finding after discussing the evidence supporting that conclusion. The officer's body camera video showed that just a few minutes elapsed between the initial stop and the arrest of Tatro and the search of her belongings. *Tatro*, 2018 WL 1770191, at *5.

Before us, the State does not dispute this finding, and the evidence supports it. We thus hold the district court did not err in finding that the first factor weighs in favor of suppression.

*Intervening factor*

As to the second factor, the State relied heavily on the officer's discovery of a warrant for Tatro's arrest as an intervening factor. The district court, in a conclusory fashion, stated: "As to the second factor, the Court does not find there were any intervening circumstances." The Court of Appeals disagreed, relying heavily on *Strieff*, 136 S. Ct. 2056. See *Tatro*, 2018 WL 1770191, at *5-7.

*Strieff* clarified the importance of an arrest warrant as an intervening factor. After *Brown*, a split of authority had developed about the importance of an arrest warrant as an intervening circumstance. See *Strieff*, 136 S. Ct. at 2060; *Moralez*, 297 Kan. at 413 (collecting and discussing decisions). The United States Supreme Court granted review in *Strieff* to resolve that split and, in doing so, specifically mentioned this court's *Moralez*

11

decision in which we joined other states assigning "little significance" to the discovery of a warrant. *Strieff*, 136 S. Ct. at 2060.

The *Strieff* Court first addressed a threshold question of whether the attenuation doctrine even applies when the State relies on the discovery of a warrant as an intervening factor. The Court held that trial courts should apply the doctrine and the three-factor test set out in *Brown* if a preexisting warrant was discovered. 136 S. Ct. at 2061. To this extent, the *Strieff* Court upheld the *Moralez* court's use of *Brown*'s three-factor attenuation doctrine analysis. And the *Strieff* Court did not disturb the *Moralez* court's reasoning on any point other than the weight to be given to the discovery of a "valid, pre-existing, and untainted arrest warrant." See 136 S. Ct. at 2061. On that point, the *Strieff* Court held an officer's discovery of an arrest warrant is an intervening factor that "strongly favors the State." 136 S. Ct. at 2062. This holding abrogates that portion of our decision in *Moralez* that joined other courts in giving little weight to the warrant as an intervening circumstance. But it abrogated only that portion of *Moralez*.

Tatro makes a passing argument that we should continue to give little weight to the discovery of an arrest warrant. But this court based its *Moralez* holding on the Fourth Amendment, and this court must follow the United States Supreme Court's interpretation of the United States Constitution. See *State v. Lawson*, 296 Kan. 1084, Syl. ¶ 1, 297 P.3d 1164 (2013) ("The United States Supreme Court's interpretation of the United States Constitution is controlling upon and must be followed by state courts."). This means we must follow *Strieff* unless we determine a different rule applies under the Kansas Constitution. But Tatro does not explain why a different rule would apply in Kansas, and develops no argument on this point. At best, the point was incidentally raised but not argued, which is akin to failing to brief the issue. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (issue not briefed is considered waived and abandoned); *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) (point raised incidentally in a brief

12

and not argued is also considered abandoned). Nor did she support the point with citation to pertinent authority or otherwise explain why it was sound. We thus consider her argument waived and abandoned. See *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015) (failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue).

Relying on the Fourth Amendment, the State cited *Strieff* to the district court. But, without explanation, the district court not only gave the arrest warrant little weight, it apparently gave it no weight, finding no intervening circumstance existed. The Court of Appeals held the district court erred:

> "[T]he facts related to the respective officer's knowledge of pre-existing arrest warrants before the initial illegal detentions in the present case and *Strieff* are legally indistinguishable. Both [officers] . . . respectively stopped Tatro and Strieff for the investigation of criminal activity. For purposes of the *Strieff* court's analysis, both [officers] . . . lacked reasonable suspicion to detain the individuals. During the course of the illegal detention, both officers learned that the individuals possessed valid arrest warrants. Accordingly, the existence of an arrest warrant on Tatro provides an intervening circumstance that dissipates the taint of the initial illegal seizure under the reasoning of *Strieff*." *Tatro*, 2018 WL 1770191, at *6.

On this point, we agree with the Court of Appeals. Given *Strieff*'s holdings (1) that a preexisting, valid, and untainted arrest warrant presents an intervening circumstance and (2) this intervening circumstance carries great weight, we hold substantial competent evidence does not support the district court's finding that there was no intervening circumstance. As the *Strieff* Court observed, "'[a] warrant is a judicial mandate to an officer to . . . make an arrest, and the officer has a sworn duty to carry out its provisions.' *United States v. Leon*, 468 U.S. 897, 920 n.21, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)." *Strieff*, 136 S. Ct. at 2062. Simply put, an officer cannot ignore the warrant's mandate to

13

make an arrest while faithfully carrying out his or her official duties. See 136 S. Ct. at 2062-63.

Here, the officer discovered an arrest warrant that predated his encounter with Tatro. And Tatro has not argued the warrant was tainted, invalid, or related to the reasons the officer initiated the stop. Upon learning of the warrant, the officer had an independent duty to arrest Tatro entirely unrelated to the reasons for the initial stop. In other words, the arrest was lawful even if the initial seizure was not. And once the officer made a lawful arrest based on the warrant, he had the authority to search Tatro and her purse under the search incident to lawful arrest exception to the warrant requirement. The second factor strongly favors the State. See 136 S. Ct. at 2062-63. Again, however, no single factor controls and all factors must be considered. See *Brown*, 422 U.S. at 600-04.

*Flagrancy*

The third factor—the purpose and flagrancy of the official misconduct—is perhaps the most critical to the analysis. See *Strieff*, 136 S. Ct. at 2062 (identifying this factor as "'particularly' significant"). Its significance arises because it focuses on the primary purpose of the exclusionary rule—deterring police misconduct. See *State v. Talkington*, 301 Kan. 453, 487, 345 P.3d 258 (2015) ("'To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it.' *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 172 L. Ed. 2d 496 [2009]."). Thus, under *Strieff*, even if an officer conducts a proper search incident to lawful arrest after discovering a warrant, the evidence may still be suppressed if the officer engaged in flagrant police misconduct. See *Strieff*, 136 S. Ct. at 2063-64. "For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure." *Strieff*, 136 S. Ct. at 2064.

In *Strieff*, when considering whether the officer's conduct was flagrant, the United States Supreme Court examined whether the officer acted in good faith; determined that the officer's "decision to initiate the stop was mistaken, [but] his conduct thereafter was lawful"; and concluded "there is no indication that this unlawful stop was part of any systemic or recurrent police misconduct." 136 S. Ct. at 2063.

Here, whether the third factor weighs in favor of suppression turns on the officer's subjective state of mind. In other words, did the officer act in good faith? Did he honestly but mistakenly believe he had reasonable suspicion to detain Tatro and did so as part of a bona fide investigation of suspected criminal activity, not merely in the hope something would turn up? See *Strieff*, 136 S. Ct. at 2063-64. In *Brown*, 422 U.S. at 605, the United States Supreme Court expanded on facts in that case that suggested the police officer's conduct had been purposeful. The Tenth Circuit and other courts have summarized that discussion, itemizing considerations:

> "[P]urposeful and flagrant misconduct is generally found where:  '(1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed "in the hope that something might turn up."' *United States v. Simpson*, 439 F.3d 490, 496 (8th Cir. 2006) (quoting *Brown*, 422 U.S. at 605). Additionally, it may be significant that the 'officers ha[d] no right whatsoever to detain the person from whom consent is sought.'" *United States v. Fox*, 600 F.3d 1253, 1261 (10th Cir. 2010).

Consistent with these considerations, this court has found flagrant misconduct where an officer knowingly detains someone without authority. See *State v. Cleverly*, 305 Kan. 598, 612, 385 P.3d 512 (2016). And *Cleverly* adheres to the United States Supreme Court's flagrancy standard. See *Kaupp v. Texas*, 538 U.S. 626, 628, 633, 123 S. Ct. 1843, 155 L. Ed. 2d 814 (2003) (flagrant misconduct where a warrantless arrest was made in

15

the arrestee's home after police were denied a warrant and at least some officers knew they lacked probable cause); *Taylor v. Alabama*, 457 U.S. 687, 692-94, 102 S. Ct. 2664, 73 L. Ed. 2d 314 (1982) (flagrant misconduct where arrest made without probable cause to interrogate suspect in hope that something might turn up); see also *Fox*, 600 F.3d at 1261-62 (flagrant misconduct where officer detained motorist without reasonable suspicion to obtain consent to search in hope something might turn up); *United States v. Shaw*, 464 F.3d 615, 630-31 (6th Cir. 2006) (flagrant misconduct where arrest made without probable cause to conduct interrogation in the hope that something might turn up).

The district court did not specifically discuss these considerations. But it found the officer "did not testify that he had reasonable suspicion to believe [Tatro] had committed, was committing, or was about to commit a crime when he made contact with her." And it labeled the officer's conduct as "egregious" and concluded the third factor weighed in favor of suppression.

The Court of Appeals came to the opposite conclusion after stating it was "not possible to distinguish" the officer's conduct here from that of the officer in *Strieff*. *Tatro*, 2018 WL 1770191, at *7. In comparing the officers' conduct, the panel stated:

> "Both officers presumably possessed the subjective belief that they possessed reasonable suspicion to conduct an investigation. [The officer here] clearly believed he possessed reasonable suspicion to stop Tatro to investigate the rash of vehicle burglaries in the area, and the State has presented an appellate argument that [the officer's] knowledge and experience created reasonable suspicion." 2018 WL 1770191, at *7.

The Court of Appeals, however, did not discuss the district court's finding that the officer's action was egregious—a term that seems at least a close cousin to flagrancy. And we find it hard to reconcile the district court's conclusion of egregious conduct with

the Court of Appeals statement that the officer "*presumably*" possessed a subjective belief that a reasonable suspicion existed. As the district court found, the officer did not testify that he had such a belief. And the record shows he used equivocal language when testifying about the events. Further, as the Court of Appeals held, reasonable suspicion did not support the stop. Tatro walked in the middle of the street, carrying a purse, a bottle of water, and a flashlight to see where she was walking on the very dark street. She was not near any cars and had no burglary tools. The video reflects that the officer approached her and said:

> "The reason I'm making contact with you is that it's kind of late . . . we have people that kind of uh get into situations where we have vehicle burglaries that take place and all that kind of stuff. So we're just going to have to I.D. people and just kind of see what they're up to and what not."

The officer did not discuss any specific concerns about vehicle burglaries with Tatro. He asked for her name, date of birth, address, and other biographical information, including where she worked and with whom she lived. He also asked if her roommate had a relationship with someone called "Shorty." The entire exchange seemed aimed more at having information about who had been in the area if evidence of a vehicle burglary later arose. At the suppression hearing, he testified that car burglaries often occurred late at night. But he stopped short of saying he believed Tatro *herself* had committed, was committing, or was about to commit a vehicular burglary or any other crime.

It is unclear from the record if the officer acted on a good-faith belief he had reasonable suspicion of criminal activity or if his purpose was investigatory in design and purpose and executed "'in the hope that something might turn up.'" *Brown*, 422 U.S. at 605. Given the conflicting inferences that can be drawn from the record, the Court of

Appeals erred in presuming the officer acted in good faith and subjectively believed that reasonable suspicion existed. The officer's subjective beliefs and intent present questions of fact that turn on the weight and credibility of the evidence. Cf. *State v. Gonzalez-Sandoval*, 309 Kan. 113, 124, 431 P.3d 850 (2018) (district court's finding that the State "honestly believed" factual statements made to justify a peremptory strike was a credibility determination); *State v. Kettler*, 299 Kan. 448, 467, 325 P.3d 1075 (2014) (intent is a question of fact that "may be inferred from the established circumstances of a case, provided the inferences are reasonable"). And appellate courts do not weigh facts or determine credibility. *Sharp*, 289 Kan. at 80.

The district court did not explain what facts it relied on in support of its conclusion of egregious behavior. It made no finding about the officer's subjective belief. Nor did the court make an express credibility determination about the officer's testimony. And it is hard to discern if the district court's error on the intervening factor tainted its findings about flagrancy. These circumstances leave us unable to resolve the third factor.

*Remand*

When a district court fails to make adequate findings and the parties fail to object to those findings, we sometimes presume the court made the findings necessary to support its conclusion. See *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015); *State v. Herbel*, 296 Kan. 1101, 1119, 299 P.3d 292 (2013). But the presumption does not arise and remand is necessary if the lack of findings precludes meaningful review. See *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). This appeal presents such a circumstance. The district court's findings are too unclear to determine whether it correctly decided the third factor. As the Court of Appeals noted, the facts here parallel those in *Strieff*. We cannot tell if the district court distinguished those facts or, as it failed

18

to do on the second factor, did not apply *Strieff*. We therefore remand for further proceedings.

On remand, the district court must determine whether the officer honestly but mistakenly believed he had reasonable suspicion of criminal activity, or whether he knew he lacked authority to detain Tatro or did not reasonably believe he had that authority. And the district court must determine whether the officer detained Tatro in the hope that something would turn up during the stop. Then the court must consider those findings in the context of the other *Brown* factors to determine whether suppression furthers the purpose of the exclusionary rule.

CONCLUSION

The judgment of the Court of Appeals is reversed. The case is remanded to the district court with directions.

19