IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,133

STATE OF KANSAS,
*Appellee*,

v.

DANIEL J. CHRISTIAN,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under the exclusionary rule, if a criminal defendant challenges the State's use of evidence obtained in violation of the Fourth Amendment to the United States Constitution, a court may suppress the primary evidence obtained as a direct result of an illegal search or seizure and evidence later discovered and found to be derivative of an illegality. But the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.

2.

The attenuation doctrine is an exception to the exclusionary rule. It applies when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.

1

3.

No bright-line rule defines when the attenuation doctrine applies. Rather, courts must examine the particular facts of each case and determine whether those circumstances attenuate the taint of illegality.

4.

When a party appeals a ruling based on the attenuation doctrine, the appellate court considers a question of fact it must review to determine whether it is supported by substantial competent evidence. The ultimate legal conclusion of whether to suppress the evidence is reviewed de novo.

5.

The United States Supreme Court has identified three nonexclusive factors for determining whether the attenuation doctrine applies. First, courts look to the temporal proximity between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional seizure. Second, courts consider intervening circumstances. Third, and particularly significant, a court examines the purpose and flagrancy of the official misconduct. No one factor is controlling, and other factors also may be relevant to the attenuation analysis.

6.

Under the attenuation doctrine's temporal proximity factor, a finding of attenuation is not generally appropriate unless substantial time elapses between an unlawful act and when a law enforcement officer obtains the evidence.

7.

Development of probable cause to arrest based on a police officer's discovery of evidence of a crime after the officer has illegally detained an individual does not

attenuate the taint of an illegal seizure and allow admission of evidence obtained in a later search. The probable cause flows directly from the unlawful seizure and does not break the causal connection between the Fourth Amendment violation and the search. It is not, therefore, an intervening circumstance.

8.

Whether the third attenuation factor of purposeful or flagrant misconduct weighs in favor of suppression turns on multiple considerations, including whether the officer acted in good faith, committed multiple unconstitutional acts following the unconstitutional seizure, or acted as part of a systemic and recurrent pattern of police misconduct. As to the factor of good faith, the officer's subjective state of mind weighs heavily. Courts should generally find purposeful and flagrant misconduct if: (1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his or her conduct was likely unconstitutional but still engaged in it; and (2) the misconduct was investigatory in design and purpose and executed in the hope that something might turn up.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 8, 2017. Appeal from Reno District Court, TIMOTHY J. CHAMBERS, judge. Opinion filed July 26, 2019. Judgment of the Court of Appeals affirming the district court on the single issue subject to our review is reversed. Judgment of the district court is reversed and the case is remanded for further proceedings.

*Randall Hodgkinson*, of Kansas Appellate Defender Office, argued the cause, and *Kimberly Streit Vogelsberg*, of the same office, was on the briefs for appellant.

*Andrew R. Davidson*, assistant district attorney, argued the cause, and *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: In this appeal, a Court of Appeals panel reversed Daniel J. Christian's convictions and sentences, holding he did not properly waive his right to a jury trial. But the panel also provided guidance on remand about Christian's motion to suppress evidence seized after a police officer unconstitutionally detained him. The panel applied the attenuation doctrine, concluding the district court could admit the evidence. The panel's holding rests mainly on its determination that a police officer's discovery of an expired tag on Christian's vehicle presented an intervening circumstance that attenuated the taint of the officer's unconstitutional seizure of Christian. *State v. Christian*, No. 116,133, 2017 WL 3947406, at *1, 4-5, 9 (Kan. App. 2017) (unpublished opinion). We reverse that holding because the discovery of the expired tag did not break the causal chain set in motion by the illegal seizure.

FACTUAL AND PROCEDURAL BACKGROUND

Christian lawfully parked his car on a public street and sat there for a period of time. An unidentified caller contacted police to report a suspicious car in front of her house. A Hutchinson police officer responded and saw a car matching the one described by the caller. The car's driver—later identified as Christian—ducked down as the officer drove past. The officer parked his patrol car perpendicular to the rear of Christian's car, activated his emergency lights, and got out to make contact. As he approached the car, he noticed its license tag had expired. The officer asked Christian for his driver's license and proof of insurance. Christian produced a valid driver's license but did not have proof of insurance. The officer told Christian to exit the vehicle, and he arrested Christian for failure to provide proof of insurance.

Christian tried to take his keys with him, but the officer instructed him to put them on the car's roof. Another officer then arrived and asked Christian about a small silver container on Christian's key chain. Christian responded he kept pills in it and, when asked, consented to a search of the container. It contained a "[g]reen leafy vegetation" consistent with marijuana. The first officer then placed Christian under arrest for possession of marijuana, and the officers searched Christian's vehicle. The search revealed two digital scales, some marijuana, and methamphetamine. A search of Christian's person also revealed a clear baggie inside his pocket.

The State charged Christian with possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. He filed a motion to suppress evidence, arguing officers obtained it as the result of an unlawful seizure. The State asserted the first officer had reasonable suspicion to initiate the stop and the discovery of the expired tag justified continuation of the detention. The State argued Christian consented to the search of the container on his key ring and the discovery of marijuana provided probable cause to arrest and reasons to believe the officers would find additional evidence of the crime in the vehicle. The State claimed the automobile exception based on probable cause plus exigent circumstances justified the officers' search of Christian's vehicle. The State further asserted the evidence in the wallet and container was admissible under the inevitable discovery doctrine because officers had arrested Christian, would have the vehicle towed, and would conduct an inventory search of the vehicle and a search of Christian's personal property upon intake at the jail.

The district court held an evidentiary hearing, following which it issued a written decision denying Christian's motion. The district court found officers seized Christian when the first officer pulled behind the vehicle and activated his emergency lights. The district court noted "[t]he State [employed] the shotgun approach in presenting its position. The questioning and answers of the officer were tailored to support a number of

different legal theories supporting the search." But the district court determined the pertinent inquiry was whether the officer had reasonable suspicion for the stop and found it was a "close yes." It denied the motion to suppress, holding:

> "When the officer observed the expired tag, the custody then expanded beyond the stage of reasonable suspicion. The lack of insurance justified an arrest. [Christian] consented to a search of the container on the key chain. The car was going to be towed and therefore the vehicle would have been inventoried."

The court accepted Christian's waiver of a jury trial and convicted him of all charges at an evidentiary bench trial. Christian filed a timely notice of appeal, raising three issues. The Court of Appeals reversed his convictions and sentence, holding he did not properly waive his right to a jury trial.

Even though that holding reversing his convictions rendered the other issues moot, the panel addressed the merits of Christian's suppression motion because the issue could arise again on remand. See *Christian*, 2017 WL 3947406, at *4-5. The panel found the initial seizure was unsupported by reasonable suspicion. But it upheld the denial of Christian's motion under a different legal rationale—the United States Supreme Court's attenuation doctrine analysis in *Utah v. Strieff*, 579 U.S. __, 136 S. Ct. 2056, 195 L. Ed. 2d 400 (2016). The panel dismissed Christian's third argument—a challenge to his criminal history score—as moot. See *Christian*, 2017 WL 3947406, at *9.

Christian timely petitioned for this court's review on the attenuation and criminal history issues. This court granted Christian's petition only on the suppression issue. This means the criminal history issue argued by Christian is not before us. See Supreme Court Rule 8.03(i)(1) (2019 Kan. S. Ct. R. 53).

Our jurisdiction is proper under K.S.A. 20-3018(b) (petition for review of Court of Appeals decision).

## ANALYSIS

Christian's petition presents a narrow issue about whether *Strieff*'s attenuation doctrine analysis applies to allow the admission of the evidence. Some background helps put this issue in perspective because, while the issue is now narrow, it began before the district court with the broader question: Did the officers violate Christian's rights under the Fourth Amendment to the United States Constitution and, if so, should the court exclude any evidence derived from the seizure and search?

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. By prohibiting "unreasonable" searches and seizures, the Fourth Amendment inferentially allows "reasonable" ones. Reasonable searches and searches include those supported by a valid warrant or by one of the warrant-requirement exceptions defined by the United States Supreme Court. *State v. Doelz*, 309 Kan. 133, 140, 432 P.3d 669 (2019). When, as here, a criminal defendant seeks to suppress evidence obtained from a search following a detention that is a seizure, the legality of both the seizure and the search present intertwined questions because an unlawful seizure may taint the search and make it unconstitutional. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007); see K.S.A. 22-2402; see also *Terry v. Ohio*, 392 U.S. 1, 18, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The issue Christian presented to the district court was the intertwined question of whether an unlawful detention tainted the later search.

7

The district court found the officer seized Christian when he pulled behind Christian's vehicle and activated his emergency lights. But the district court applied one of the well-delineated exceptions to the requirement that a warrant justify a seizure, finding the officer had reasonable suspicion that a crime had been, was being, or was about to be committed. See *Terry*, 392 U.S. at 20-22. The district court thus admitted the evidence. But the Court of Appeals disagreed, ruling the district court erred in finding that reasonable suspicion justified the initial detention. See *Christian*, 2017 WL 3947406, at *8.

The State did not cross-petition for review of that ruling, so it is not properly before this court. See Rule 8.03(b)(6)(C)(i) and (iii), (c)(3); *State v. Gray*, 306 Kan. 1287, 1292-93, 403 P.3d 1220 (2017). We, therefore, accept the panel's finding that the officer unlawfully seized Christian. This determination would often lead to a ruling that the court had to suppress the methamphetamine, marijuana, and drug paraphernalia discovered on Christian and in his car.

Suppression results from applying the exclusionary rule under which a court may suppress the "primary evidence obtained as a direct result of an illegal search or seizure" and "evidence later discovered and found to be derivative of an illegality," the so-called "'fruit of the poisonous tree'" if it finds officers obtained evidence in violation of the Fourth Amendment. *Segura v. United States*, 468 U.S. 796, 804, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984); see *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) (explaining fruit of the poisonous tree doctrine); *State v. Deffenbaugh*, 216 Kan. 593, 598, 533 P.2d 1328 (1975) (same). But "'the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.'" *Brown v. Illinois*, 422 U.S. 590, 599-600, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975) (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 [1974]).

8

The United States Supreme Court has recognized several exceptions to the exclusionary rule. Some of these "exceptions involve the causal relationship between the unconstitutional act and the discovery of evidence." *Strieff*, 136 S. Ct. at 2061. Here, the State has placed one of those exceptions—the attenuation doctrine—in issue. The attenuation doctrine applies "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" *Strieff*, 136 S. Ct. at 2061 (quoting *Hudson v. Michigan*, 547 U.S. 586, 593, 126 S. Ct. 2159, 165 L. Ed. 2d 56 [2006]); see *Brown*, 422 U.S. at 603.

No bright-line rule defines when the attenuation doctrine applies. Rather, courts must examine the particular facts of each case and determine whether those circumstances attenuate the taint of illegality. *Brown*, 422 U.S. at 603. Given that requirement, when a party appeals a ruling based on the attenuation doctrine, the appellate court considers a question of fact that it reviews to determine whether the fact is supported by substantial competent evidence. See *State v. Smith*, 286 Kan. 402, 420, 184 P.3d 890, *cert. denied* 555 U.S. 1062 (2008). Then, the appellate court reviews the district court's ultimate legal conclusion de novo. See *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

To aid a district court's weighing of the facts, the United States Supreme Court in *Brown*, 422 U.S. at 603-04, identified three factors to be considered in determining whether the attenuation doctrine applies. This court later applied those factors. See *State v. Moralez*, 297 Kan. 397, 415, 300 P.3d 1090 (2013); *State v. Williams*, 297 Kan. 370, Syl. ¶ 9, 300 P.3d 1072 (2013). More recently in *Strieff*, the United States Supreme Court reiterated the *Brown* factors:

9

"First, we look to the 'temporal proximity' between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search. Second, we consider 'the presence of intervening circumstances.' Third, and 'particularly' significant, we examine 'the purpose and flagrancy of the official misconduct.'" 136 S. Ct. at 2062.

No one factor controls, and other factors may be relevant to the attenuation analysis. See, e.g., *Brown*, 422 U.S. at 600-04; *State v. Martin*, 285 Kan. 994, 1003, 179 P.3d 457, *cert. denied* 555 U.S. 880 (2008).

In this case, our analysis differs from most cases in which we review a district court's application of the attenuation doctrine because the district court did not address the issue. Rather, it was first considered in the panel's decision. The panel thus had to take the findings made by the district court and fit them into factors the district court had not considered. And while the State asked the panel to consider the doctrine, it never argued why the Court of Appeals could consider the doctrine for the first time on appeal. For good reason, we usually will not consider issues for the first time on appeal, especially those that involve issues of fact like the attenuation doctrine. See *State v. Brown*, 309 Kan. 369, 375, 435 P.3d 546 (2019). Here, based on the facts before us, we have determined the guidance provided by the Court of Appeals is incorrect. So we too will take the available facts, which are largely undisputed, and apply them, while also pointing out where the parties may not have developed facts.

Within those limitations, for guidance on remand, we discuss the panel's analysis of the three attenuation doctrine factors.

*Temporal proximity*

In discussing the temporal proximity of the search to the unconstitutional seizure, the panel stated:

> "As to the first factor, if a substantial amount of time passes between the illegality and the discovery of evidence, such a fact supports not suppressing the evidence. 136 S. Ct. at 2062. While it is true that an exact time between the illegal stop and the discovery of the evidence is not apparent from the record, we do know that the officer discovered Christian's expired license plate before he began his encounter with Christian." *Christian*, 2017 WL 3947406, at *9.

We are not entirely certain how the panel weighed this factor. But nothing in the record suggests a significant lapse in time between the unlawful seizure and the discovery of evidence. The first factor does not "[favor] attenuation unless 'substantial time' elapses between an unlawful act and when the evidence is obtained." *Strieff*, 136 S. Ct. at 2062. Here, the first factor favors suppression.

*Intervening circumstances*

For the attenuation doctrine to apply, there must be a sufficient intervening event to break the causal connection between the illegal seizure and the discovery of evidence. See *Brown*, 422 U.S. at 603-04. In *Strieff*, the United States Supreme Court clarified the importance of the discovery of an arrest warrant, holding it is an intervening factor that "strongly favors the State." 136 S. Ct. at 2062. Here, the Court of Appeals panel relied on this holding in *Strieff* and found "the discovery of the expired license plate was a sufficient intervening circumstance which gave law enforcement justification in and of itself to stop Christian's vehicle." *Christian*, 2017 WL 3947406, at *9. But the panel did not explain how this was equivalent to the discovery of a warrant in *Strieff*. See

*Christian*, 2017 WL 3947406, at *9. And the State provided no argument to this effect in its brief to the Court of Appeals. We determine the comparison fails.

The *Strieff* Court limited its holding to "the discovery of a valid, preexisting, and untainted arrest warrant." *Strieff*, 136 S. Ct. at 2061. In large part, it was the preexisting nature of the warrant that attenuated the taint of the unconstitutional seizure. See *State v. Tatro*, No. 118,237 (Slip op. at 12), this day decided. Here, the intervening circumstance was not the discovery of an arrest warrant. Rather, it was the officer observing evidence of a crime made apparent *after* the officer unlawfully seized Christian and in the course of the officer's unconstitutionally initiated investigation. Christian argues this circumstance distinguishes his arrest from that in *Strieff*, which was based on a valid, untainted, and preexisting warrant unrelated to the stop. We agree with Christian.

The *Strieff* Court emphasized that "'[a] warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions.'" *Strieff*, 136 S. Ct. at 2062 (quoting *United States v. Leon*, 468 U.S. 897, 920 n.21, 104 S. Ct. 3405, 82 L. Ed. 2d 677 [1984]). In other words, a valid warrant that predates and is unconnected with the stop *independently compels* the officer to make an arrest, and that order does not rest on the officer's exercise of discretion. Once arrested, the officer can conduct a search incident to the arrest. But the search follows an intervening "ministerial act" consistent with the officer's "'sworn *duty* to carry out [the] provisions'" of the arrest warrant. (Emphasis added.) See *Strieff*, 136 S. Ct. at 2062-63.

Christian's arrest did not result from the officer fulfilling his duty to execute a preexisting arrest warrant. Instead, the panel found the officer had *discretion* to arrest Christian for no proof of insurance. See *Christian*, 2017 WL 3947406, at *9. Detaining Christian for the expired tag and arresting him for no proof of insurance were not "ministerial act[s]" consistent with the officer's "'sworn duty to carry out [the]

12

provisions'" of an arrest warrant. See *Strieff*, 136 S. Ct. at 2062-63. Rather, these were discretionary acts within his investigatory role as a law enforcement officer.

In addition, unlike a valid, preexisting warrant *unrelated* to the stop, the bases relied on to detain—the expired tag—and arrest Christian—the lack of proof of insurance—arose from and were directly related to the unlawful initial detention. Granted, these facts supported probable cause that crimes had been committed. But all of the officer's actions flowed from and were tainted by the unconstitutional seizure. To rule otherwise would allow derivative evidence to attenuate the initial illegality. But that is not the attenuation doctrine's purpose. See *Brown*, 422 U.S. at 602-05 (holding court could not admit defendant's confession because *Miranda* warnings did not break causal chain between an illegal arrest and statements later made).

In *United States v. Gaines*, 918 F.3d 793, 802 (10th Cir. 2019), the Tenth Circuit Court of Appeals recently rejected a similar argument under similar facts. There, police received a call from a citizen reporting that a man in a red hat had just sold drugs in a parking lot. Officers responded and pulled into the parking lot with their roof lights activated. The officers then parked behind a car in which a man in red clothing sat. They gestured for the man to get out of the car and, as he did, they smelled the odor of PCP and observed an open container of alcohol. When the officers advised the defendant they would detain him, he fled. Officers caught him and conducted a search, finding the evidence at issue.

The Tenth Circuit held the officers unconstitutionally seized the defendant. It then turned to the government's arguments about the attenuation doctrine. One of the arguments considered was whether the discovery of the open container and the smell of PCP provided probable cause that would trigger the attenuation doctrine. The Tenth Circuit rejected the argument because "even if probable cause existed, it would have

13

flowed directly from the seizure. . . . So the discovery of evidence would still be traced directly to the possible Fourth Amendment violation. . . . Given this direct causal connection, the eventual development of probable cause would not trigger the attenuation doctrine." *Gaines*, 918 F.3d at 802 (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 [1963]).

The same conclusion applies here. Discovering evidence of a crime when that discovery flows directly from the unconstitutional seizure does not attenuate the taint of the Fourth Amendment violation.

*Flagrancy*

The third factor—the purpose and flagrancy of the official misconduct—focuses on the primary purpose of the exclusionary rule—deterring police misconduct. See *Strieff*, 136 S. Ct. at 2062. "For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure." *Strieff*, 136 S. Ct. at 2064. Today, in *Tatro*, we have delineated possible considerations in applying the flagrancy factor. *Tatro*, No. 118,237 (Slip op. at 15). We noted that in *Strieff* the Court examined whether the officer acted in good faith; determined that the officer's "decision to initiate the stop was mistaken, [but] his conduct thereafter was lawful"; and concluded "there is no indication that this unlawful stop was part of any systemic or recurrent police misconduct." 136 S. Ct. at 2063. Focusing on the aspect of good faith, we incorporated some considerations identified by the Tenth Circuit :

"[P]urposeful and flagrant misconduct is generally found where: '(1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed "in the hope that something might turn

14

up."' *United States v. Simpson*, 439 F.3d 490, 496 (8th Cir. 2006) (quoting *Brown*, 422 U.S. at 605)." *United States v. Fox*, 600 F.3d 1253, 1261 (10th Cir. 2010).

We also noted that this court has found flagrant misconduct where an officer knowingly detains someone without authority. See *State v. Cleverly*, 305 Kan. 598, 612, 385 P.3d 512 (2016).

Here, the Court of Appeals panel held:

> "Finally, as to the purpose and flagrancy of the police conduct, 136 S. Ct. at 2062, we see nothing in the record that suggests this stop was related to a systemic or recurrent police misconduct. The officers were responding to a complaint about a suspicious vehicle. There was nothing to suggest that the officers' goal was to search Christian for drugs." *Christian*, 2017 WL 3947406, at *9.

Christian does not dispute this. But we note he conceded only "the Court of Appeals' finding that nothing suggested the stop was related to a systemic or recurrent problem with police misconduct." The panel did not directly discuss the other types of flagrancy discussed in *Strieff* and *Fox*. But it indirectly did so when it considered whether the search—separated from the taint of the seizure—was constitutional. The panel at least implied that the search of Christian's vehicle was a proper search incident to arrest for no proof of insurance. See *Christian*, 2017 WL 3947406, at *9.

This conclusion conflicts with the permissible scope for the search of a vehicle under *Arizona v. Gant*, 556 U.S. 332, 351, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."). In *Gant*, the Court held officers could not search inside Gant's vehicle following his arrest "for

driving with a suspended license—an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." 556 U.S. at 344. Here, the panel identified a *lack* of proof of insurance as the crime of arrest. See *Christian*, 2017 WL 3947406, at *9. Like *Gant*, it was not reasonable for the officers to believe they would find evidence of that crime in Christian's vehicle. See 556 U.S. at 344.

The panel's discussion was thus partially incorrect and narrow, lacking a discussion of the officer's subjective good faith.

CONCLUSION

Even though we cannot fully evaluate the flagrancy factor, the other factors weigh heavily toward a determination that there was no attenuation of the taint of the illegal seizure and the district court should have suppressed the evidence derived from the search. Even if nothing in the record revealed flagrancy, the attenuation doctrine does not allow the admission of the evidence here.

We thus disagree with and disapprove of the panel's guidance on the suppression issue. This does not change the Court of Appeals' holding that the waiver of jury trial was improper or its decision to reverse Christian's convictions and sentence for that reason. Nor does it change the Court of Appeals' conclusion that the officer lacked reasonable suspicion for the initial detention and, thus, the district court erred on that point. All we decide is that, at least on the facts before us, the attenuation doctrine does not apply.

The guidance judgment of the Court of Appeals affirming the district court on the single issue subject to our review is reversed. Judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion.